4. Great Northern is an Indiana corporation that conducts the business of insurance in the State of Texas. The insurance business conducted by the Insurance Defendant in Texas includes, but is not limited to:

- A. The taking or receiving of applications for insurance from Texas citizens, including Plaintiff's application for insurance;

- B. The making and issuing of contracts of insurance with Texas citizens, including Plaintiff;

- C. The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof from Texas citizens, including any such consideration or payments from Plaintiff; and

- D. The issuance and delivery of contracts of insurance to residents of Texas, including Plaintiff.

5. As set out above, Great Northern is doing business in the state of Texas. Furthermore, Great Northern must have anticipated being hailed into court in Texas because it agreed to insure and be responsible to cover losses to Total's property located in Texas. In addition, the State of Texas has a strong interest in the regulation of insurance as exemplified by the Texas Insurance Code. Therefore, it is appropriate for the Court to exercise jurisdiction over Great Northern.

6. At all times relevant, Total has owned and operated a pharmacy located at 9101 Lakeview Parkway, Suite 500 in Rowlett, Rockwall County, Texas (the "Pharmacy").

## IV. BACKGROUND

7. The Insurance Defendant sold property insurance to Total that covered tornado damage to the Pharmacy, among other perils. Under the Policy, Great Northern promised to provide $25 million of Business Income and Extra Expense coverage (with a deminimus 24-hour waiting period deductible). Despite receiving the full premium from Total, Great Northern has



THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE.

KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

since reneged on its promise to reimburse Total for its Business Income and Extra Expense losses. Such losses exceed the minimum jurisdiction of this Court.

8. During the Policy period, on or about December 26, 2015, the Pharmacy and its contents were devastated by a tornado and resulting wind and water damage. Notice of the devastation was promptly given to the Insurance Defendant pursuant to the terms of the Policy.

9. Business Income loss is determined based on the likely net income of the insured business if no covered loss or damage had occurred. Total, through its accountants' information, promptly provided to Great Northern both the net income before the loss, as well as projected net income for 2016 had the Pharmacy remained in business. Such likely future net income is based on Total's extensive understanding of its pharmacy business, including the ease and speed with which third-party payor contracts can be replaced.

10. Great Northern retained forensic accounting firm HSNO to determine the likely amount of Business Income lost by Total through June 2016 as a result of the tornado. According to its website, HSNO was founded 46 years ago; it is an internationally recognized accounting firm specializing in insurance claims. In fact, HSNO touts on its website its unique ability to ferret out and thoroughly assess the facts that are important to the analysis of insurance claims; and to do so quickly.

11. HSNO thoroughly reviewed Total's books and records to its heart's content, fully analyzed same, and repeatedly conferred with Total's outside accounting firm. Total's accountants answered all of HSNO's questions, and provided all requested information to HSNO.

12. According to HSNO's report to Great Northern, Total's Pharmacy began operations in 2014, "with sales, in general, increasing on a monthly basis from the initial


THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE.
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

operations through the date of loss." HSNO Report dated January 11, 2016 at 1. "Sales increased from $360,000 in January 2015 to $9.7MM in November 2015. Sales for the three month period of September through November 2015 averaged approximately $10MM per month." *Id.* HSNO also advised Great Northern that Total's "budgeted sales projections for December 2015 through April 2016 are reasonable." HSNO Report dated March 11, 2016, at 5.

13. As a direct result of the tornado, the Insured suffered a Business Income and Extra Expense loss in excess of the Policy's limits (even after deducting all proceeds received from Pharmacist Mutual). Indeed, on January 11, 2016, the Insurance Defendant's consultant, HSNO, advised Great Northern that Total's Business Income loss alone exceeded $35 million through June 2016. The Pharmacy continued to experience Business Income losses after June 2016; yet, Great Northern did not bother to assess Business Income losses for periods subsequent to June 2016.

14. Total consulted with a contractor that was willing to rebuild the Pharmacy for approximately $400,000. Great Northern, however, urged Total to allow Belfor Property Restoration to repair the devastated Pharmacy. In conjunction with such request, Great Northern, not Total, accepted Belfor's rates for construction, and promised that it would pay the Belfor invoice to the extent it exceeded the sum of $400,000. Belfor's invoice exceeded this amount by the sum of $905,233. But Great Northern reneged on this promise, causing Belfor to place a lien on the real property leased by Total. Total's landlord advised that Belfor's lien constituted a breach of a lease covenant and demanded that it be removed. Total promptly forwarded the landlord's notice of breach to Great Northern requesting that it pay Belfor's invoice as it promised. Disregarding the exposure it was subjecting its Insured to, Great


THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

Northern refused to pay for any part of Belfor's invoice, even the sum of $452,617 that Great Northern has admitted it owed.

## V. NATURE OF THE CASE

15. This is a first-party insurance coverage case stemming from total devastation of the Pharmacy caused by tornado-driven wind and water. Plaintiff seeks a declaration that the Pharmacy, as well as its Business Income and Extra Expense losses, are covered by the Policy issued by the Insurance Defendant. Plaintiff seeks damages for breach of contract, violations of the Texas Insurance Code, and common law bad faith. Plaintiff also seeks to recover treble damages under the Insurance Code, 18% interest per annum under the Insurance Code, punitive damages under the common law duty of good faith and fair dealing, pre-judgment interest under the Finance Code, attorneys' fees, expenses, costs of court and/or post-judgment interest at the maximum allowable rate.

16. Plaintiff has performed all conditions precedent to its recovery under the Policy, or the Insurance Defendant has waived same.

17. Plaintiff gave timely notice to the Insurance Defendant.

18. The Insurance Defendant did not acknowledge receipt of the claim in writing.

19. The Insurance Defendant did assign the claim to an adjuster, Byron Smith, to investigate the loss. The adjuster's investigation was slight, superficial, slow, and unreasonable.

20. Plaintiff promptly provided information to the Insurance Defendant and its agents as they requested, and provided ample opportunities for the Insurance Defendant to inspect the damage to the Pharmacy and Total's records.

21. The Insurance Defendant has failed and refused to pay Plaintiff in accordance with its promises under the Policy.


THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

22. The Insurance Defendant failed to make an attempt to settle Total's claim in a fair manner, even though its liability to Total became reasonably likely in January 2016. This conduct is a violation of Tex. Ins. Code. ch. 541.

23. The Insurance Defendant has failed to offer Plaintiff adequate reimbursement for its loss without any explanation why full payment was not being made. The Insurance Defendant did not communicate that any future settlements or payments would be forthcoming to pay the entire loss covered under the Policy. This conduct violates Tex. Ins. Code. ch. 541.

24. The Insurance Defendant failed to affirm or deny full coverage within a reasonable time. Plaintiff did not receive timely indication of acceptance or rejection regarding the full and entire claim in writing from the Insurance Defendant in a timely manner. This conduct is a violation of Tex. Ins. Code ch. 541.

25. The Insurance Defendant failed to conduct a reasonable investigation. The Insurance Defendant performed a result-oriented investigation of Plaintiff's claim which resulted in an unfair, biased and inequitable evaluation of Plaintiff's loss. This conduct is a violation of Tex. Ins. Code. ch. 541.

26. The Insurance Defendant failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim. This conduct is in violation of Tex. Ins. Code ch. 542.

27. The Insurance Defendant failed to accept or deny Plaintiff's full and entire claim within the time period mandated by statute. This conduct is a violation of Tex. Ins. Code ch. 542.


THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE

KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

28. The Insurance Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of the claim without delay. This conduct is a violation of Tex. Ins. Code. ch. 542.

## VI. CAUSES OF ACTION

29. **Declaratory Judgment.** Plaintiff re-alleges the foregoing and following paragraphs. Pursuant to the Texas Declaratory Judgment Act, Plaintiff is entitled to a declaration that (i) the Policy is enforceable, (ii) the Policy provides Business Income and Extra Expense coverage for the Pharmacy, (iii) Plaintiff is insured under the Policy and is entitled to damages for Business Income loss and Extra Expense loss, and (iv) Plaintiff is entitled to recover the remaining Policy limits. Alternatively, Plaintiff seeks a declaration that the Policy is ambiguous, and must be interpreted in Plaintiff's favor and in favor of full coverage. Further, Plaintiff requests a declaration that the Insurance Defendant has waived any right, or is estopped, to deny that the Policy provides full coverage for Plaintiff's claim for all Extra Expense and Business Income losses suffered by the Insured.

30. **Breach of Contract.** Plaintiff re-alleges the foregoing and following paragraphs. The acts and omissions of the Insurance Defendant and its agents constitute a breach and/or anticipatory breach of the Insurance Defendant's insurance contract with Plaintiff. Plaintiff has satisfied all conditions precedent to the fulfillment of its contractual rights, yet the Insurance Defendant has failed to pay the full amount owing under the Policy. Plaintiff seeks all damages for such breach, including actual damages, consequential damages, special damages, attorneys' fees through trial, appeal, and Supreme Court review, pre- and post-judgment interest, expenses, and costs of court.


THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

31. **Violations of the Texas Insurance Code.** Plaintiff re-alleges the foregoing and following paragraphs. At all pertinent times, the Insurance Defendant was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of the Insurance Defendant and its agents constitute violations of the Texas Insurance Code. More specifically, the Insurance Defendant has, among other violations, acted unlawfully in violating the following statutory provisions:

- Insurance Code ch. 542, *et seq.*, the Prompt Pay Act, by the following, among other things:

    a. The Insurance Defendant failed to acknowledge receipt of the claim in writing. 542.055(a)(1).

    b. The insurer must request from the insured all items, statements, and forms that the insurer reasonably believes will be required from the insured. 542.055(a)(3). Great Northern and its consultants requested information, not at one time, but on a rolling basis. Multiple incremental requests constitutes an unfair insurance practice. Nevertheless, Total satisfied the rolling requests.

    c. Once the insurer receives the information from its 542.055(a)(3) request to the Insured:

        i. The carrier has 15 business days to accept or reject the claim in writing. 542.056(a). (The Insurance Defendant could have asked for a 45-day extension, but it does not appear that it did.) If the insurer rejects the claim in whole or in part, the notice must state the reasons. 542.056(c). Great Northern failed to comply with this provision.

        ii. If the insurer accepts the claim, it has 5 business days to pay. 542.057. Great Northern failed to comply with this provision.

        iii. As an additional deadline, the carrier must pay the claim within 60 days after receiving the items reasonably requested from the insured. 542.058(a). Great Northern failed to comply with this provision.

    d. Rather than pay Policy limits in January 2016, as it should have, the Insurance Defendant has strung Total along for approximately nine months, in abject violation of the *Prompt Pay Act*.

ORIGINAL PETITION        PAGE 8

DAL:945645 2


THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE.
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

- Insurance Code chapter 541, *et seq.* by the following, among other things:

    a. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability had become reasonably clear.

    b. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a Policy with respect to which liability had become reasonably clear in order to influence Plaintiff with respect to another portion of the Policy.

    c. Failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claim.

    d. Refusing to affirm or deny coverage within a reasonable time.

    e. Refusing to pay Plaintiff's claims without conducting a reasonable and prompt investigation.

32. As a result of the foregoing conduct, which was and is the producing and proximate cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, special damages, and/or consequential damage, costs, expenses, and reasonable and necessary attorneys' fees through trial, appeal, and Supreme Court review. Moreover, one or more of the foregoing acts or omissions were "knowingly" and intentionally made by the Insurance Defendant, entitling Plaintiff to recover treble damages pursuant to the Insurance Code. The Insurance Defendant has also violated the Prompt Pay Act, which automatically entitles Total to 18% per annum interest on Total's damages.

33. **Bad Faith.** Plaintiff re-alleges the foregoing and following paragraphs. The Insurance Defendant has refused to pay or delayed in paying a claim after liability has become reasonably clear. This constitutes a breach of its common law duty of good faith and fair dealing, *i.e.*, it has acted in "bad faith."



THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE.

KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

34. Moreover, the Insurance Defendant has "investigated," "adjusted," and otherwise handled Plaintiff's claim in a malicious, intentionally harmful, result-oriented, negligent, and/or grossly negligent fashion. To wit, the Insurance Defendant has, among other things, (i) demanded that Total breach confidentiality covenants in Total's business contracts, (ii) intentionally or recklessly exposed Total to liability to Belfor Restoration and to Total's landlord, (iii) threatened that the Insured breached the Policy when Total merely asked Great Northern to update its reservation of rights letter before examining the Insured under oath, (iv) provided misleading information to Total, (v) refused Total's request to mediate before a neutral third party, (vi) prevented Total from being able to reasonably prepare for the Insurer's Examination Under Oath in order to ambush the Insured, and (vii) made argumentative and false accusations against Total during the Examination Under Oath. Such acts and omissions were done maliciously for the sole purpose of bullying Total and coercing it into dropping its claim. Such misconduct is unlawful, and in breach of the special duties Great Northern owes to its Insured.

35. Plaintiff has sustained and continues to sustain serious losses as a result of the Insurance Defendant's refusal to honor the Policy. The Insurance Defendant is well aware that its actions involve an extreme risk that Plaintiff will suffer financial loss as a result of its refusal to honor its obligations and actions intended to inflict injury on Total. Yet Great Northern is consciously indifferent to Plaintiff's rights.

36. Plaintiff is entitled to recover its actual damages, consequential damages, special damages, extra-contractual damages, punitive damages, and pre- and post-judgment interest resulting from, produced by, and proximately caused the Insurance Defendant's acts and omissions.



THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE.

KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

37. **Fraudulent Inducement.** Plaintiff re-alleges the foregoing and following paragraphs.

38. In January 2016, Great Northern's adjuster, Byron Smith, became aware that Total's contractor could rebuild the Pharmacy for in the neighborhood of $400,000. Mr. Smith, however, urged Total to use Great Northern's choice of contractor instead. To induce Total to use Great Northern's contractor, Great Northern promised to pay the difference in price between $400,000 and the amount ultimately charged by Great Northern's contractor (hereinafter, the "differential"). In fact, Mr. Smith approved the rates charged by Great Northern's contractor, further leading Total to believe that Great Northern would pay the differential. Total would not have entered into a Work Authorization Contract with Belfor Property Restoration (Great Northern's contractor) but for Great Northern's promise to pay the differential.

39. Thus, the Insurance Defendant's adjuster, Byron Smith, made a representation to Total's representative. The representation was material. The representation was false. When Great Northern made the representation, Great Northern knew the representation was false, or made the representation as a positive assertion recklessly and without knowledge of its truth. Great Northern made the representation with the intent that Total act on it. Total relied on the representation. The representation caused Total injury. Great Northern is by its actions and statements to the Insured estopped to deny responsibility for the differential.

40. Great Northern has refused to pay the differential, or any portion thereof. Such fraudulent inducement by Great Northern is the proximate cause of the following damages suffered by Total: out of pocket damages; benefit of the bargain damages; exemplary or punitive damages; court costs; reasonable attorneys' fees through trial, appeal, and Supreme Court review; and pre-judgment and post-judgment interest.



THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE.
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

41. **Pattern and Practice.** (This paragraph is based on information and belief.) Total's experience is not an isolated case. The acts and omissions of the Insurance Defendant committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice and pattern of the Insurance Defendant with regard to handling these types of claims. The Insurance Defendant's entire process is unfairly designed to reach favorable outcomes for the Insurance Defendant at the expense of the policyholders. Because of this pattern and practice, Plaintiff is entitled to recover punitive damages against the Insurance Defendant.

42. **Attorneys' Fees.** Plaintiff re-alleges the foregoing and following paragraphs. Plaintiff has been required to engage the services of the undersigned attorneys and has agreed to pay a reasonable fee for services expended and to be expended in the prosecution of Total's claim against the Insurance Defendant through the trial court and all levels of the appellate process, including all appeals and Supreme Court review. Plaintiff seeks the recovery of all of such attorneys' fees and expenses.

43. **Interest.** With respect to all causes of action asserted herein, Plaintiff seeks the recovery of pre-judgment and post-judgment interest at the highest rates allowable by law.

## VII. CONDITIONS PRECEDENT

44. All conditions precedent for Plaintiff to recover under the Policy and all causes of action pled herein have been met, or have been waived by the Insurance Defendant.

## VIII. JURY DEMAND

45. Plaintiff requests a trial by jury.

## IX. PRAYER

WHEREFORE, Plaintiff seeks and prays for the following relief:

ORIGINAL PETITION                                                                                    PAGE 12
DAL 945645.2

THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

A. The Court's declaration as requested above.

B. Damages for Plaintiff for breach of contract, including actual damages, consequential damages, special damages, Business Income loss, and Extra Expense loss.

C. Penalty in the amount of 18% interest per annum for each violation of the Prompt Pay Act.

D. Damages for violations of chapter 541 of the Texas Insurance Code, including treble damages.

E. Damages for breach of the duty of good faith and fair dealing, including but not limited to punitive damages.

F. Damages for fraudulent inducement, including but not limited to punitive damages.

G. Reasonable and necessary attorneys' fees through trial, appeal, and Supreme Court review.

H. Pre- and post-judgment interest, expenses, and costs of court.

Plaintiff also seeks all other relief and rulings to which it may be legally or equitably entitled.



THIS IS A TRUE AND CORRECT COPY OF THE
ORIGINAL DOCUMENT ON FILE IN MY OFFICE

KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY, TEXAS

Dated: September 23, 2016

                                          Respectfully Submitted,

                                          **ANDREWS KURTH LLP**

                                          */s/ Robert M. Hoffman*
                                          Robert M. Hoffman
                                          State Bar No. 09788200
                                          RobHoffman@andrewskurth.com
                                          1717 Main Street, Suite 3700
                                          Dallas, Texas 75201
                                          Telephone: (214) 659-4653
                                          Facsimile: (214) 659-4401

                                          Mary Kaylan Dunn
                                          State Bar No. 24076359
                                          kaylandunn@andrewskurth.com
                                          600 Travis Street, Suite 4200
                                          Houston, Texas 77002
                                          Telephone: (713) 220-4200
                                          Facsimile: (713) 220-4285

                                          **ATTORNEYS FOR PLAINTIFF**

THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT ON FILE IN MY OFFICE.
KAY McDANIEL
DISTRICT CLERK
ROCKWALL COUNTY TEXAS
By: [signature] 10-18-2016