UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOTAL RX CARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-2965 |
| | § | |
| GREAT NORTHERN INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

# FIRST AMENDED COMPLAINT

Plaintiff Total Rx Care, LLC ("Total Rx," the "Insured" or "Plaintiff") files this First Amended Complaint against Great Northern Insurance Company (the "Insurance Defendant" or "Great Northern").

## I. PARTIES

1. Total Rx is a Texas limited liability company with its principal place of business in Texas.

2. Great Northern is an Indiana corporation that conducts the business of insurance in the State of Texas.

## II. JURISDICTION AND VENUE

3. This matter was removed to this Court by the Insurance Defendant pursuant to 28 U.S.C. §1332, on the basis of diversity of citizenship between the Plaintiff and Insurance Defendant and an amount in controversy exceeding $75,000.

4. Venue is appropriate in the Northern District of Texas because all or part of the Insurance Defendant's statutory violations and contractual breaches were committed in the Northern District of Texas, the property which is the subject of this lawsuit and Plaintiff's

insurance claim is located in the Northern District of Texas, and Great Northern mishandled the adjustment of Total Rx's claim in the Northern District of Texas.

### III. BACKGROUND

5. Total Rx is the Named Insured under Policy number 3603-34-80 DAL (the "Policy") issued by Great Northern for the Policy period September 4, 2015 to September 4, 2016. Prior to December 26, 2015, Total Rx owned and operated a pharmacy located at 9101 Lakeview Parkway, Suite 500 in Rowlett, Rockwall County, Texas (the "Pharmacy"). During the Policy period, on or about December 26, 2015, the Pharmacy and its contents were struck by a tornado and resulting wind and water damage. The Pharmacy instantly became non-operational. Notice of the devastation was promptly given to the Insurance Defendant pursuant to the terms of the Policy.

6. The Policy covered loss due to tornado damage. Under the Policy, Great Northern promised to provide $25 million of Business Income and Extra Expense coverage (with a deminimus 24-hour waiting period deductible). Despite receiving the full premium from Total Rx, Great Northern has broken its promise to fully reimburse Total Rx for its Business Income and Extra Expense losses up to Policy limits.

7. Great Northern's adjuster, Byron Smith, inspected the shuttered Pharmacy on or about January 4, 2016. On or about January 6, 2016, he requested specific information from Total Rx:

   a.  Total Rx's lease for the Pharmacy building,

   b.  Total Rx's financial information,

   c.  contact information for Total Rx's contractor, emergency mitigation company, and the drug destruction company,

   d.  the Pharmacists Mutual policy issued to Total Rx Care, Inc.,

   e. information regarding whether an alternate facility could not be created,

   f. vendor invoices, and

   g. invoices for destroyed drugs.

Such information was promptly provided.

  8. Great Northern also retained forensic accounting firm HSNO to estimate the likely amount of Business Income lost by Total Rx through June 2016 as a result of the tornado. According to its website, HSNO was founded 46 years ago and is an internationally recognized accounting firm specializing in insurance claims. In fact, HSNO touts its unique ability to ferret out and thoroughly assess the facts that are important to the analysis of insurance claims; and to do so quickly.

  9. HSNO reviewed Total Rx's books and records to its heart's content, fully analyzed same, and repeatedly conferred with Total Rx's outside accounting firm and business consultant. Total Rx's accountants and business consultant answered HSNO's questions, and provided all requested information to HSNO, including Total Rx's 2014 and 2015 financials and the 2016 budget projections prepared in the fall of 2015.

  10. The information provided to HSNO enabled it to issue a report to Great Northern on January 11, 2016, estimating Total Rx's Business Income loss through June 2015. According to HSNO's report, Total Rx's Pharmacy began operations in 2014, "with sales, in general, increasing on a monthly basis from the initial operations through the date of loss." HSNO Report dated January 11, 2016 at 1. "Sales increased from $360,000 in January 2015 to $9.7MM in November 2015. Sales for the three month period of September through November 2015 averaged approximately $10MM per month." *Id.* HSNO found, and so advised Great Northern, that Total Rx's "budgeted sales projections for December 2015 through April 2016 are

reasonable." HSNO Report dated March 11, 2016, at 5. In fact, HSNO informed Great Northern that Total Rx's Business Income loss exceeded $35 million through June 2016.

11. Shortly after HSNO issued its January 11, 2016 report to Great Northern, HSNO and Great Northern requested additional specific information, including:

    a. the Medoc contract and information regarding the "Sales Management Fees" account,

    b. monthly summary of new prescriptions filled, existing prescriptions filled, and revenue per prescription filled,

    c. December 2015 revenue figures,

    d. payroll expenses, and

    e. monthly revenue and costs of goods sold.

12. Wendy Sanhai (working for Great Northern) requested:

    a. list of tasks and associated timelines for the Pharmacy construction, and

    b. "various recertifications and state inspections, etc., you anticipate with this process."

Such information was promptly provided to Great Northern or HSNO.

13. On January 17, 2016, Great Northern's consultant Vericlaim requested and obtained still more specific information from Total Rx:

    a. interior build-out plan,

    b. contact information of contractor who performed the prior interior build-out,

    c. Total Rx's plans for the restored facility, and

    d. other questions about finish-out plans.

14. Soon therafter, HSNO and/or Great Northern requested and was provided with:

    a. The contact information of the Pharmacy's architect;

    b. Bank reconciliation data;

    c.    2015 reconciliations of revenue;

    d.    Accountants' workpapers;

    e.    Additional information regarding Total Rx's revenue and accounts receivable;

    f.    Additional profit and loss information;

    g.    Prescription-filled data;

    h.    Copies of construction plans, permits, and costs from Belfor;

    i.    Additional information regarding expenses;

    j.    The number of reversed/cancelled prescriptions;

    k.    Total Rx bank statements.

[The foregoing list is illustrative, it is not exclusive by any means.]

15. Business Income loss is determined based on the likely net income of the insured business if no covered loss or damage had occurred, plus all charges and expenses that are likely to continue during the period of business interruption. It is commonly based on the financial information existing prior to the covered event.

16. Shortly after the tornado, Total Rx promptly provided to Great Northern both the net income figures and necessary expenses existing before the tornado, as well as projected net income and necessary expenses for 2016 had the Pharmacy remained operational. Such likely future net income is based on Total Rx's extensive understanding of its pharmacy business, including the ease and speed with which terminated third-party payor contracts can be successfully appealed, supplanted, and/or replaced.

17. On March 11, 2016, HSNO issued a second report to Great Northern, refining its calculation of Total Rx's business interruption loss. Its findings were consistent with the findings in HSNO's January 11, 2016 report; that being, Business Income losses through June 2016 exceeded Policy limits.

18. Great Northern should have paid Policy limits by or before March 2015. Instead, Great Northern tried to conceal what it owed by making Business Income payments of only $3 million in February 2016 and $2,775,126 in April 2016. Such payments were made without a fulsome explanation.

19. Total Rx consulted with a contractor that was willing to rebuild the Pharmacy for approximately $400,000. Great Northern, however, urged Total Rx to allow Belfor Property Restoration to repair the devastated Pharmacy instead. In conjunction with such request, Great Northern, not Total Rx, accepted Belfor's rates for construction, and promised that it would pay the Belfor invoice to the extent it exceeded the sum of $400,000. Belfor's invoice exceeded this amount by the sum of $905,233. But Great Northern reneged on this promise, causing Belfor to place a lien on the real property leased by Total Rx. Total Rx's landlord advised that Belfor's lien constituted a breach of a lease covenant and demanded that the lien be removed within 30 days. Total Rx promptly forwarded the landlord's notice of breach to Great Northern, requesting that it pay Belfor's invoice as it promised. Disregarding the exposure it was subjecting its Insured to, Great Northern refused to pay any part of Belfor's invoice, even the sum of $452,617 that Great Northern has admitted it owes.

## IV.  NATURE OF THE CASE

20. This is a first-party insurance coverage case stemming from tornado-driven wind and water that made the Pharmacy completely inoperable. Among other things, Plaintiff seeks a declaration that the Pharmacy, as well as its Business Income and Extra Expense losses, are covered by the Policy issued by the Insurance Defendant. Plaintiff seeks damages for breach of contract; violations of the Texas Insurance Code; violations of the Texas Deceptive Trade Practices Act ("DTPA"); fraud, fraudulent inducement, and/or promissory estoppel; and common law bad faith. Plaintiff seeks to recover treble damages under the Insurance Code; quadruple

damages under the DTPA; 18% interest per annum under the Insurance Code; punitive damages under the common law duty of good faith and fair dealing and/or fraud/fraudulent inducement; pre-judgment interest under the Finance Code; attorneys' fees; expenses; costs of court; and/or post-judgment interest at the maximum allowable rate. Plaintiff notes that the Texas Insurance Code and DTPA are to be construed liberally in favor of protecting the policyholder and penalizing the insurer for late or under payment.

21. Plaintiff has performed all conditions precedent to its recovery under the Policy, or the Insurance Defendant has waived same.

22. Plaintiff gave timely notice to the Insurance Defendant. The Insurance Defendant did not acknowledge receipt of the claim in writing.

23. The Insurance Defendant assigned the claim to a non-Texas adjuster, Byron Smith, to investigate the loss. The adjuster's investigation, however, was slight, superficial, slow, and unreasonable by Texas standards.

24. Plaintiff promptly provided information to the Insurance Defendant and its agents as they requested, and provided ample opportunities for the Insurance Defendant to inspect the damage to the Pharmacy and Total Rx's records.

25. The Insurance Defendant has failed and refused to pay Plaintiff in accordance with its promises under the Policy and with the legal requirements imposed on insurance companies conducting business in this state.

26. The Insurance Defendant failed to effectuate settlement in a fair manner, even though its liability to Total Rx became reasonably likely in January 2016. This conduct is a violation of Tex. Ins. Code. ch. 541.

27. The Insurance Defendant has failed to offer Plaintiff adequate reimbursement for its loss without any explanation why full payment was not being made. The Insurance Defendant did not communicate that any future settlements or payments would be forthcoming to pay the entire loss covered under the Policy. This conduct violates Tex. Ins. Code. ch. 541.

28. The Insurance Defendant failed to affirm or deny full coverage within a reasonable time. Plaintiff did not receive timely indication of acceptance or rejection regarding the full and entire claim in writing from the Insurance Defendant in a timely manner. This conduct is a violation of Tex. Ins. Code ch. 541.

29. The Insurance Defendant failed to conduct a reasonable or timely investigation. The Insurance Defendant performed a result-oriented investigation of Plaintiff's claim which resulted in an unfair, biased, and inequitable evaluation of Plaintiff's loss. This conduct is a violation of Tex. Ins. Code. ch. 541.

30. The Insurance Defendant failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claim. This conduct is in violation of Tex. Ins. Code ch. 542.

31. The Insurance Defendant failed to accept or deny Plaintiff's full and entire claim within the time period mandated by statute. This conduct is a violation of Tex. Ins. Code ch. 542.

32. The Insurance Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of the claim without delay. This conduct is a violation of Tex. Ins. Code. ch. 542.

## V. CAUSES OF ACTION

33. **Declaratory Judgment.** Plaintiff re-alleges the foregoing and following paragraphs. Pursuant to the Declaratory Judgment Act, Plaintiff is entitled to a declaration that

(i) the Policy is enforceable, (ii) the Policy provides Business Income and Extra Expense coverage for the Pharmacy, (iii) Plaintiff is insured under the Policy and is entitled to damages for Business Income loss and Extra Expense loss caused by the tornado and Defendant's acts and omissions, (iv) Total Rx's parent is not an insured under the Policy; (v) Great Northern is not entitled to receive a substantial windfall, and saddle Total Rx with a substantial loss, on the grounds that Total Rx paid two premiums instead of one; and (vi) Plaintiff is entitled to recover the remaining Policy limits plus other damages.  Alternatively, Plaintiff seeks a declaration that the Policy is ambiguous, and must be interpreted in Plaintiff's favor and in favor of full coverage in the amount of Policy limits.  Further, Plaintiff requests a declaration that the Insurance Defendant has waived any right, or is estopped, to deny that the Policy provides full coverage for Plaintiff's claim for all Extra Expense and Business Income losses suffered by the Insured up to Policy limits.

34. **Breach of Contract.**  Plaintiff re-alleges the foregoing and following paragraphs.  The acts and omissions of the Insurance Defendant and its agents constitute a breach and/or anticipatory breach of the Insurance Defendant's insurance contract with Plaintiff.  Plaintiff has satisfied all conditions precedent to the fulfillment of its contractual rights, yet the Insurance Defendant has failed to pay the full amount owing under the Policy.  Plaintiff seeks all damages for such breach, including actual damages, consequential damages, reliance damages, special damages, attorneys' fees through trial, appeal, and Supreme Court review, pre- and post-judgment interest, expenses, and costs of Court.

35. **Violations of the Texas Insurance Code.**  Plaintiff re-alleges the foregoing and following paragraphs.  At all pertinent times, the Insurance Defendant was engaged in the business of insurance as defined by the Texas Insurance Code.  The acts and omissions of the

Insurance Defendant and its agents constitute violations of the Texas Insurance Code. More specifically, the Insurance Defendant has, among other violations, acted unlawfully in violating the following statutory provisions:

**A.     Insurance Code ch. 542, *et seq*., the Prompt Pay Act, by the following, among other things:**

36.     The Insurance Defendant failed to acknowledge receipt of the claim in writing. 542.055(a)(1).

37.     The insurer must request from the insured all items, statements, and forms that the insurer reasonably believes will be required from the insured. 542.055(a)(3). Great Northern requested information, not at one time as it should have, but on a rolling basis which continues ten months after the tornado struck the Pharmacy. Multiple incremental requests constitute an unfair insurance practice. Nevertheless, Total Rx satisfied, and continues to satisfy, the rolling requests (without waiving its position that a reasonable investigation period ended long ago).

38.     Once the insurer receives the information from its 542.055(a)(3) request to the Insured:

   a.   The carrier has 15 business days to accept or reject the claim in writing. 542.056(a). (The Insurance Defendant could have asked for a 45-day extension, but it does not appear that it did.) If the insurer rejects the claim in whole or in part, the notice must state the reasons. 542.056(c). Great Northern failed to comply with this provision.

   b.   If the insurer accepts the claim, it has five business days to pay. 542.057. Great Northern failed to comply with this provision.

   c.   As an additional deadline, the carrier must pay the claim within 60 days after receiving the items reasonably requested from the insured. 542.058(a). Great Northern failed to comply with this provision.

39.     Rather than pay Policy limits in January 2016, as it should have, the Insurance Defendant has strung Total Rx along for approximately eleven months, in abject violation of the *Prompt Pay Act.*

**B.     Insurance Code chapter 541,** *et seq.* **by the following, among other things:**

a.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability had become reasonably clear.

b.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a Policy with respect to which liability had become reasonably clear in order to influence the Insured with respect to another portion of the Policy.

c.  Failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claim.

d.  Refusing to affirm or deny coverage within a reasonable time.

e.  Refusing to pay Plaintiff's claims without conducting a reasonable, unbiased, and prompt investigation.

40.  As a result of the foregoing conduct, which was and is the producing and proximate cause(s) of injury, loss, and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, reliance damages, special damages, and/or consequential damage, costs, expenses, and reasonable and necessary attorneys' fees through trial, appeal, and Supreme Court review.  Moreover, one or more of the foregoing acts or omissions were "knowingly" and/or intentionally made by the Insurance Defendant, entitling Plaintiff to recover treble damages pursuant to the Insurance Code.  The Insurance Defendant has also violated the Prompt Pay Act, which automatically entitles Total Rx to recover 18% per annum interest on Total Rx's damages plus an additional 5% per annum interest under the Texas Finance Code.

41.  **DTPA Violations.**  Plaintiff re-alleges the foregoing and following paragraphs. The Insurance Defendant committed an unlawful deceptive trade practice under DTPA § 17.46(b)(12), as incorporated by Texas Insurance Code § 541.151, when it convinced Total Rx to permit Belfor Property Restoration to rebuild the Pharmacy by falsely assuring Total Rx that

the Insurance Defendant would pay the Belfor invoice beyond the sum of $400,000. Plaintiff relied on this promise to its detriment. Specifically, Belfor's invoice exceeded this amount by the sum of $905,233, and the Insurance Defendant has refused to pay for any part of Belfor's invoice, even the sum of $452,617 that Insurance Defendant has admitted it owes.

42.     As a result of the foregoing conduct, which was and is the producing and proximate cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, benefit of the bargain damages, out of pocket damages, special damages, reliance damages, and/or consequential damage, costs, expenses, and reasonable and necessary attorneys' fees through trial, appeal, and Supreme Court review. Moreover, one or more of the foregoing acts or omissions were "knowingly" and intentionally made by the Insurance Defendant, entitling Plaintiff to recover up to quadruple damages under the DTPA or up to treble damages pursuant to the Insurance Code.

43.     **<u>Bad Faith.</u>** Plaintiff re-alleges the foregoing and following paragraphs. The Insurance Defendant has refused to pay or delayed in paying a claim after liability has become reasonably clear. This constitutes a breach of its common law duty of good faith and fair dealing, *i.e.,* it has acted in "bad faith."

44.     Moreover, the Insurance Defendant has "investigated," "adjusted," and otherwise handled Plaintiff's claim in a malicious, intentionally harmful, result-oriented, negligent, and/or grossly negligent fashion. To wit, the Insurance Defendant has, among other things, (i) demanded that Total Rx breach confidentiality covenants in Total Rx's business contracts, (ii) intentionally or recklessly exposed Total Rx to liability to Belfor Restoration and to Total Rx's landlord, (iii) threatened that the Insured breached the Policy when Total Rx merely asked Great Northern to update its reservation of rights letter before examining the Insured under oath, (iv)

provided misleading information to Total Rx, (v) refused Total Rx's request to mediate before a neutral third party, (vi) prevented Total Rx from being able to reasonably prepare for the Insurer's Examination Under Oath so Great Northern could ambush the Insured, and (vii) made argumentative and false accusations against Total Rx during the Examination Under Oath.  Such acts and omissions were done maliciously for the sole purpose of bullying Total Rx into dropping its claim.  Such misconduct is unlawful, and in breach of the special duties Great Northern owes to its Insured.

45. Plaintiff has sustained and continues to sustain serious losses as a result of the Insurance Defendant's refusal to honor the Policy.  The Insurance Defendant is well aware that its actions involve an extreme risk that Plaintiff will suffer financial loss as a result of its refusal to honor its obligations.  Yet Great Northern is consciously indifferent to Plaintiff's rights.  Alternatively, the Insurance Defendant's acts and/or omissions have been intended to inflict injury on Total Rx.

46. Plaintiff is entitled to recover its actual damages, consequential damages, reliance damages, special damages, extra-contractual damages, punitive damages, and pre- and post-judgment interest resulting from, produced by, and/or proximately caused the Insurance Defendant's acts or omissions.

47. **<u>Fraud, Fraudulent Inducement and/or Promissory Estoppel.</u>**  Plaintiff re-alleges the foregoing and following paragraphs.  In January 2016, Great Northern's adjuster, Byron Smith, became aware that Total Rx's contractor could rebuild the Pharmacy for a price in the neighborhood of $400,000.  Mr. Smith, however, urged Total Rx to use Great Northern's choice of contractor instead, at a substantial increase in cost.  To induce Total Rx to agree to use Great Northern's contractor, Great Northern promised to pay the difference in price between

$400,000 and the amount ultimately charged by Great Northern's contractor (hereinafter, the "differential"). Great Northern's contractor would not perform absent Great Northern's approval. For instance, the contractor sent its proposed pricing to Great Northern for approval rather than Total Rx. Mr. Smith approved the rates charged by Great Northern's contractor, further leading Total Rx to believe that Great Northern would pay the differential as promised. Total Rx would not have entered into a Work Authorization Contract with Belfor Property Restoration (Great Northern's contractor) but for Great Northern's promise to pay the differential. Pleading in the alternative, Great Northern was a third party beneficiary or implied party to that Work Authorization Contract.

48. Thus, the Insurance Defendant's adjuster, Byron Smith, made a representation to Total Rx's representative. The representation was material. The representation was false. When Great Northern made the representation, Great Northern knew the representation was false, or made the representation as a positive assertion recklessly and without knowledge of its truth. Great Northern made the representation with the intent that Total Rx act on it. Total Rx relied on the representation. The representation caused Total Rx injury. Great Northern is by its actions and statements estopped to deny responsibility for the differential.

49. Great Northern has refused to pay the differential, or any portion thereof. Such false and/or reckless statements by Great Northern are the proximate cause of the following damages suffered by Total Rx: out of pocket damages; benefit of the bargain damages; reliance damages; exemplary or punitive damages; Court costs; reasonable attorneys' fees through trial, appeal, and Supreme Court review; and pre-judgment and post-judgment interest.

50. **Pattern and Practice.** (This paragraph is based on information and belief.) Total Rx's experience is not an isolated case. The acts and omissions of the Insurance Defendant

committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice and pattern of the Chubb Group of Insurance Companies, including Great Northern, with regard to handling these types of claims. As a member of the Chubb Group of Insurance Companies, the Insurance Defendant's entire process is unfairly designed and executed to reach favorable outcomes for the Insurance Defendant at the expense of its policyholders. Because of this pattern and practice, Plaintiff is entitled to recover punitive damages against the Insurance Defendant.

51.  **Attorneys' Fees.**  Plaintiff re-alleges the foregoing and following paragraphs. Plaintiff has been required to engage the services of the undersigned attorneys and has agreed to pay a reasonable fee for services expended and to be expended in the prosecution of Total Rx's claim against the Insurance Defendant through the Trial Court and all levels of the appellate process, including all appeals and Supreme Court review. Plaintiff seeks the recovery of all of such attorneys' fees and expenses.

52.  **Interest.**  With respect to all causes of action asserted herein, Plaintiff seeks the recovery of pre-judgment and post-judgment interest at the highest rates allowable by law.

## VI.   CONDITIONS PRECEDENT

53.  All conditions precedent for Plaintiff to recover under the Policy and all causes of action pled herein have been met, or have been waived by the Insurance Defendant.

## VII.   JURY DEMAND

54.  Plaintiff requests a trial by jury.

## VIII.   PRAYER

WHEREFORE, Plaintiff seeks and prays for the following relief:

A. The Court's declaration as requested above.

B. Damages for Plaintiff for breach of contract, including actual damages, consequential damages, benefit of the bargain damages, out of pocket damages, reliance damages, special damages, Business Income loss, and/or Extra Expense loss.

C. Statutory penalty in the amount of 18% interest per annum for each violation of the Prompt Pay Act.

D. Damages for violations of Chapter 541 of the Texas Insurance Code, up to treble damages.

E. Damages for violation of the DTPA, up to quadruple damages.

F. Damages for breach of the duty of good faith and fair dealing, including but not limited to punitive damages.

G. Damages for fraud, fraudulent inducement, and/or promissory estoppel, including but not limited to punitive damages.

H. Reasonable and necessary attorneys' fees through the Trial Court, appeal, and Supreme Court review.

I. Pre- and post-judgment interest, expenses, and costs of Court.

Plaintiff also seeks all other relief and rulings to which it may be legally or equitably entitled.

Respectfully Submitted,

**ANDREWS KURTH KENYON**

*/s/ Robert M. Hoffman*
Robert M. Hoffman
State Bar No. 09788200
RobHoffman@andrewskurth.com
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4653
Facsimile: (214) 659-4401

Mary Kaylan Dunn
State Bar No. 24076359
kaylandunn@andrewskurth.com
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2016, a true and accurate copy of the foregoing document was filed with the Clerk of Court and copies of the same have been provided by ECF to the following counsel of record:

Joseph A. Ziemanski
jziemianski@cozen.com
Nicole S. Bakare
nbakare@cozen.com
COZEN O'CONNOR
1221 McKinney St., Suite 2900
Houston, Texas 77010
Fax:    832-214-3905

William H. Craven
wcraven@cozen.com
COZEN O'CONNOR
1717 Main Street, Suite 3400
Dallas, Texas 75201
Fax: 214-462-3299

*/s/ Robert M. Hoffman*
Robert M. Hoffman