UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOTAL RX CARE, LLC | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-cv-2965-B |
| | § | |
| GREAT NORTHERN INSURANCE COMPANY | § | JURY DEMANDED |
| | § | |
| *Defendant*. | § | |

**GREAT NORTHERN INSURANCE COMPANY'S BRIEF IN SUPPORT OF MOTION TO MODIFY SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER**

COMES NOW, Defendant Great Northern Insurance Company ("Great Northern") and files this reply brief in support of its motion to modify Plaintiff Total Rx Care, LLC's ("Plaintiff") *subpoena duces tecum* to non-party Hagen, Streiff, Newton & Oshiro, Accountants, PC ("HSNO"), respectfully showing the following:

**I.
INTRODUCTION**

There is no dispute that Great Northern timely filed a motion to quash or modify the subpoena that Plaintiff served on the forensic accounting firm that Great Northern retained, HSNO. There also is no dispute that Great Northern retained HSNO to assist the company in evaluating complex financial information that Plaintiff submitted as part of its insurance claim. There also is no dispute that Great Northern's motion to quash was directed to a specific category of documents, i.e. privileged communications between Great Northern, HSNO and Great Northern's counsel of record, and any work product that HSNO might have in its possession. These facts establish that Great Northern timely raised an objection to Plaintiff's subpoena, which calls for the production of privileged documents maintained by a third-party accountant.

Rule 45 of the Federal Rules of Civil Procedure requires that a subpoena asking a third-party to produce privileged materials be quashed or modified, in the absence of waiver or an exception to the privilege. Great Northern never waived any of the privileged information that HSNO may have in its possession. Great Northern served written responses to the discovery that Plaintiff served directly on it, raised the attorney-client privilege and work product doctrine objections to the same types of documents, and served a privilege log identifying those documents. Then, immediately after Plaintiff served a subpoena on its paid consultant, Great Northern timely filed a *limited* motion to quash or modify that subpoena *to the extent that it calls for privileged communications or work product*. Plaintiff cannot establish waiver on these facts.

Accordingly, the Court should grant Great Northern's motion because it has established the existence of a privilege in a handful of documents that HSNO possesses that fall within the overly broad scope of Plaintiff's subpoena. The Court also should reject Plaintiff's request for monetary sanctions. This motion is not a delay tactic, and Plaintiff ignores that Great Northern already produced over 8,000 pages of documents relating to Plaintiff's insurance claim, including most of the documents that HSNO generated as part of this insurance claim. Only approximately thirty (30) documents are involved in this motion.

## II.
## ARGUMENT

1. **AN ORDER QUASHING OR MODIFYING THE SUBPOENA TO HSNO IS APPROPRIATE BECAUSE PLAINTIFF ADMITS THAT GREAT NORTHERN RETAINED HSNO AS A FORENSIC ACCOUNTANT TO ASSIST IN THE EVALUATION OF PLAINTIFF'S INSURANCE CLAIM**

Plaintiff disingenuously argues that Great Northern's claim for privilege over the communications between Great Northern's employees, the forensic accounting firm HSNO, and Great Northern's counsel of record is "novel" and worthy of sanctions. In making these arguments, Plaintiff failed to directly challenge the validity of any of the authorities that Great Northern cited

in its motion that establish the attorney-client privilege extends to communications with party representatives, particularly accountants. (Motion at p. 3, fn. 6).

Rather, Plaintiff argues that Great Northern failed to present sufficient evidence to establish that HSNO was a representative of Great Northern at the time of the communications. However, HSNO's role as a forensic accounting firm that Great Northern hired to assist it with the investigation into Plaintiff's insurance claim is not disputed. As far as Plaintiff is concerned, HSNO's status as Great Northern's retained consultant for the purposes of evaluating the insurance claim was judicially admitted in the complaint and is binding on Plaintiff.

Plaintiff alleges that Great Northern retained HSNO to estimate the business income losses that Plaintiff suffered. (Doc. No. 6, First Amended Complaint at ¶8). Plaintiff admits that HSNO's work involves its "unique ability" to "thoroughly assess the facts that are important to the analysis of insurance claims…" *Id.* Accordingly, HSNO reviewed Plaintiff's books and records as part of the insurance claim, including Plaintiff's 2014 and 2015 financials. *Id.* at 10. Based on that information, HSNO issued a report to Great Northern in January 2016 that provided an estimate of Plaintiff's business losses. *Id.* Great Northern issued an initial $3 million payment to Plaintiff shortly thereafter. *Id.* at ¶ 18.

Following that preliminary report, HSNO and Great Northern requested further information from Plaintiff as part of the claim investigation. *Id.* at ¶¶ 11-14. HSNO issued a second report to Great Northern in March 2016 that refined its calculations. Great Northern then issued a supplemental payment of approximately $2,775,126 in April 2016. *Id.* at ¶¶ 17-18.

Based on HSNO's admitted role in assisting Great Northern to evaluate Plaintiff's claim for business income losses and its status as a retained forensic accountant, the attorney-client privileged attached to coverage counsel's discussions with Great Northern and HSNO.

Rule 503 of the Texas Rules of Evidence expressly defines a client representative as any person who, to facilitate the rendition of legal services, makes or receives a confidential communication while acting within the scope of the employment for the client. TEX. R. EVID. 503(a)(2)(B) The law does not require a formal "employment" relationship under this provision. *In re Texas Health Res.*, 472 S.W.3d 895, 902 (Tex. App.—Dallas 2015, orig. proceeding); *In re Segner*, 441 S.W.3d 409, 412 (Tex. App.—Dallas 2013, no pet.) (holding that a contract worker for an accounting firm was a client representative and could communicate with counsel for a trustee regardless of whether the worker was actually an employee). The key is whether the person was involved in the communication for the purposes of assisting the lawyer do his or her job.

When the legal advice involves complex accounting issues, attorneys often need to consult with an outside accountant in order to render his or her opinion. For this reason, an attorney may communicate both with his client and his client's accountants for the purposes of rendering legal services without risk of waiving the attorney-client privilege. *See Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125 (E.D. Tex. 2003) (noting the attorney-client privilege extended to all communications between an attorney and an accountant, including all documents prepared by the accountant of the attorney). It is irrelevant who hired the accountant so long as the communications with the attorney facilitated the rendition of the attorney's legal services. *Id.* at 145, fn 15; *see also United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982); *In re Hardwood P-G, Inc.*, 403 B.R. 445, 458-459 (W.D. Tex. 2009). Indeed, Rule 503 of the Texas Rules of Evidence expressly includes within the ambit of the representatives that may be involved in a communication "an accountant who is reasonably necessary for the lawyer's rendition of professional legal services", without any requirement that the lawyer be the one that retained the accountant. TEX. R. EVIDENCE 503(a)(4)(b).

Unlike the cases that Plaintiff cites, HSNO and Great Northern communicated with counsel as part of counsel's provision of legal service, i.e. HSNO's involvement in certain communications was for the purpose of assisting counsel.[1] (Ex. A, Affidavit of Joseph A. Ziemianksi ("Ziemianski Affid.") at ¶¶ 4-5). Because HSNO's involvement in those communications facilitated the legal advice that counsel was hired to provide, (which is particularly obvious in light of the complex business interruption claim that HSNO helped calculate), the attorney-client privilege attached to all of their confidential communications.

2. **COUNSEL WAS RETAINED TO PROVIDE COVERAGE ADVICE, NOT ACT AS AN INVESTIGATOR**

Plaintiff also disingenuously claims that counsel's communications with HSNO are not privileged because counsel took an examination under oath and, therefore, was acting as an "investigator." That is not the law.

Plaintiff overstates the opinion in *In re Texas Farmers Ins. Exchange*, 990 S.W.2d 337 (Tex. App.—Texarkana 1999, no pet.). *In re Texas Farmers* held that the facts gathered during the course of an attorney's participation in an examination under oath were not privilege. Yet, at the same time, any opinions, legal conclusions and other communications that were exchanged in his or her capacity as a lawyer are privileged. However, the Court of Appeal in expressly found that the attorney was acting as an investigator, not an attorney because the attorney stated that he was asked to take the examination under oath and forward the transcripts to the carrier for evaluation. *Id.* at 341. There was no evidence to suggest that the attorney was hired to provide legal advice.

---

[1] The case that Plaintiff relies upon to argue waiver involved an accounting firm that was not involved in the attorney's investigation. *Sims v. Kaneb Servs., Inc.*, 1988 WL 62294, *4 (Tex. App.—Houston [14th Dist.] June 18, 1988, no writ) (holding that disclosure of an attorney drafted report to an accounting firm that represented the client **before** the attorney was retained and there was no evidence to show that the firm assisted counsel in its investigation).

Cases since *In re Texas Farmers* have explained that all confidential communications between a client and counsel are privileged so long as the attorney is serving as an attorney:

> An attorney may act in a capacity other than that of an attorney. (citations omitted). Other capacities may include acting as a claims adjustor, a claim process supervisor, or a claim investigation monitor, and not as a legal advisor, for the client. (citations omitted) However, if the attorney performs tasks of an investigator or adjustor in the process of providing legal services, she is still functioning as an attorney. (citations omitted). An attorney can play an important role in adjusting an insurance claim, especially since an insurer can be assessed punitive damages for ignoring its legal obligations to the insured, (citations omitted), as long as it is done in the process of providing legal services.

*In re Subpoena of Curran*, 2004 WL 2099870, at *4-5 (N.D. Tex. 2004).

Accordingly, any confidential communications with an attorney are privileged regardless of whether the attorney participated in an investigation, so long as the communications were for the primary purpose of providing a legal opinion, other legal services, or assistance in a legal proceeding. *Id.* at *3; *see also In re Baptist Hospitals of Southeast Texas*, 172 S.W.3d 136 (Tex. App.—Beaumont 2004, orig. proceeding) (holding that the privilege extends to counsel of record's entire pre-suit investigation); *Harlandale Independent Sch. Dist. V. Cornyn*, 25 S.W.3d 328 (Tex. App.—Austin 2000, pet. denied) (holding that communications that occurred during an attorney's investigation are privileged so long as the investigation was connected to his work in providing the client a legal analysis).

Any assertion that counsel of record was serving as a mere "investigator" when he was retained as coverage counsel is easily disproved.[2] (Ziemianski Affid. at ¶¶ 4-5). Counsel in this action served as coverage counsel for Great Northern during its investigation into the underlying

---

[2] Plaintiff's assertion that Great Northern is prohibited from submitting supporting evidence in its reply brief is inaccurate because the Local Rule cited in that case dealt specifically with motions for summary judgment and the limits imposed on the introduction of evidence in reply. *Nassar v. UT Southwestern Health Sys.*, 2009 WL 2849585, at *1 (N.D. Tex. Sept. 1, 2009).

6

insurance claim.[3] As coverage counsel, his job was to analyze the coverage obligations under the policy that Great Northern issued to Plaintiff and to provide legal input on its policy obligations. After taking the examination under oath to which Plaintiff refers, his job was to advise his clients about the impact of the testimony on the insurance claim under Texas law. *Id.* at ¶ 4.

Accordingly, counsel did not function in a merely investigative capacity. Counsel was retained for the purposes of providing legal advice. *Id.* To perform those duties, it was essential to have confidential communications with Great Northern's employees and agents, as well as the accountants at HSNO. *Id.* at ¶ 5. Once Plaintiff hired counsel on August 12, 2016 (i.e., the attorney that filed this lawsuit), counsel anticipated that litigation might ensure. *Id.* at ¶6. At that juncture, the federal work product doctrine applied to all the documents that they generated as well.

**3.    GREAT NORTHERN NEVER WAIVED THE PRIVILEGE WITH REGARD TO ITS COMMUNICATIONS WITH COUNSEL AND SERVED A PRIVILEGE LOG THAT ADEQUATELY DISCLOSES THE DOCUMENTS INVOLVED**

Importantly, virtually every case that Plaintiff cites in the opposition deals with motions to compel a party to produce further documents that are in their possession, custody or control. That is not the issue before this Court. This motion involves a limited request to limit a subpoena to a non-party, to the extent that the non-party has privileged documents in its files.

This distinction makes the need to identify the privileged documents necessarily different. A party that is "withholding" documents is more equipped to provide certain details of the documents because the documents are in their possession. Thus, privilege logs and other more detailed information can be provided more easily. Where the documents are in the possession of another, it is much more difficult to prepare a detailed privilege log or identify all the subject documents with specificity – the documents are not in their possession. Indeed, Rule 45's

---

[3] Plaintiff even admits that he is "claims and litigation counsel for Great Northern." (Opposition at p.9, fn. 10).

requirement that a party describe the documents withheld only applies to a party that is "withholding" a document. FRCP 45(e)(2)(A). Great Northern is not withholding any documents in HSNO's possession; Great Northern is asserting a privilege as to documents that are in HSNO's possession.

Nonetheless, there is no question that Great Northern properly preserved the privileges associated with HSNO's files when it served its own discovery responses. (Ex. B, Great Northern's Responses to Plaintiff's First Set of Requests for Production of Documents at Response to Request No. 4). Plaintiff, therefore, cannot establish waiver.

There also is no question that Great Northern served a privilege log that adequately describes the documents at issue because Plaintiff excerpts them directly in the opposition. That log identifies the date of the document, the authors and recipients, the type of document, the nature of the privilege being asserted and a general description of the document's contents. That is all that is required to be in a privilege log. *Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014) (noting that "[t]ypically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document.") (citing *S.E.C. v. Thrasher,* 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996).

Finally, the Court should reject any insinuation that the fact that Great Northern served written discovery responses first, and then a more detailed privileged log afterwards has any bearing on this motion. There is no requirement that a party serve a privilege log at the same time as the written discovery responses to which they relate. A party properly raises and preserves a privilege objection by asserting the objection in the written responses, even if the details of the individual documents being withheld are contained in a subsequently served privilege log. *Heller*

*v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) (holding that a party preserves a privilege if they timely raise an objection and then subsequently serve a privilege log).

**4. GREAT NORTHERN ACTED REASONABLY IN FILING A LIMITED MOTION TO QUASH A SUBPOENA THAT SEEKS PRIVILEGED INFORMATION**

Sanctions are not appropriate in this matter. The only issue before the Court is whether a third-party subpoena should be quashed or modified since the broad ambit of the requests implicate privileged information. Great Northern has not "withheld" any documents in response to the subpoena. Rather, Great Northern seeks to preserve a legitimate privilege it already asserted in response to its own files, to the extent those documents also are contained in HSNO's files. Great Northern already produced nearly 8,000 pages of documents in response to Plaintiff's discovery request. Thus, Plaintiff's arguments that this motion is a "delay tactic" is simply untrue.

# III.
# PRAYER

For these reasons, Defendant Great Northern Insurance Company respectfully requests the Court to modify and to protect it from Plaintiff Total Rx Care, LLC's deposition on written questions and subpoena duces tecum to non-party Hagen, Streiff, Newton & Oshiro, Accountants, PC to the extent it requires the production of documents protected by the attorney-client and work product privileges, and for such other and further relief to which it may be entitled.

Respectfully submitted,

*/s/ Anthony DiPietra*

*Of Counsel*:

Joseph A. Ziemianski
Attorney-in-Charge
Texas State Bar No. 00797732
COZEN O'CONNOR

        1221 McKinney St., Suite 2900
        Houston, Texas  77010
        Telephone: (832) 214-3900
        Facsimile: (832) 214-3905
        E-mail: jziemianski@cozen.com

        Anthony DiPietra
        Texas State Bar No. 24085972
        COZEN O'CONNOR
        1717 Main Street, Suite 3400
        Dallas, Texas  75201
        Telephone:  (214) 462-3000
        Facsimile:  (214) 462-3299
        E-mail: adipietra@cozen.com

        *Counsel for Defendant*
        *Great Northern Insurance Company*

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of this document was served on all counsel of record, listed below, via the Court's electronic filing system, on February 28, 2017.

Robert M. Hoffmann
ANDREWS KURTH, LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201

Mary Kaylan Dunn
ANDREWS KURTH, LLP
600 Travis Street, Suite 4200
Houston, Texas 77002

*Counsel for Plaintiff Total RX Care, LLC*

                                              */s/ Anthony DiPietra*
                                              Joseph A. Ziemianski