IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOTAL RX CARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2965-B |
| | § | |
| GREAT NORTHERN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Great Northern Insurance Company has filed a Motion to Modify Subpoena Duces Tecum and for Protective Order [Dkt. No. 24] (the "Motion to Modify"), seeking an order under Federal Rules of Civil Procedure 26(c) and 45(d) to modify and protect it from Plaintiff Total Rx Care, LLC's deposition on written questions and subpoena duces tecum to non-party Hagen, Streiff, Newton & Oshiro, Accountants, PC (the "Subpoena") because documents protected from disclosure by the attorney-client privilege and work-product protections are among those responsive to the Subpoena.

United States District Judge Jane J. Boyle has referred the Motion to Modify to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 25.

Total Rx filed a response, *see* Dkt. No. 27, and Great Northern filed reply, *see* Dkt. No. 29. The Court determines that a hearing is not necessary to resolve the

Motion to Modify.

For the reasons explained below, the Court DENIES Defendant Great Northern

Insurance Company's Motion to Modify Subpoena Duces Tecum and for Protective

Order [Dkt. No. 24].

## Background

According to the Motion to Modify,

[o]n September 23, 2016, Total Rx filed this insurance coverage case against Great Northern. In support, Total Rx asserts that it submitted a claim for property damage and business interruption losses under a policy issued to it by Great Northern (the "policy") after a December 2015 tornado damaged property at its pharmacy in Rowlett, Texas (the "claim"). So far, Great Northern has paid Total Rx a total of $6,400,125.55 on the claim. Total Rx asserts that it is entitled to additional payments totaling $19,750,314.44, but it filed this lawsuit before Great Northern was able to complete its investigation and make a final coverage determination.

Even though it already sought a copy of [Hagen, Streiff, Newton & Oshiro, Accountants, PC ("HSNO")]'s file from Great Northern, Total Rx has now served HSNO with a subpoena seeking these documents again, as well as documents related to HSNO's past dealings with Great Northern and the Chubb Group of Insurance Companies. In addition to acting as a consultant to assist with evaluation of the business interruption portion of the claim, HSNO has also provided assistance to Great Northern and its counsel in connection with its pre-suit efforts to conduct examinations under oath and this lawsuit. Accordingly, documents protected from disclosure by the attorney-client and work product privileges are among those responsive to the subpoena, and Great Northern seeks to modify the subpoena and for protection from their disclosure.

Dkt. No. 24 at 1-2 (footnote omitted). Great Northern asserts that it has standing to

move to modify the Subpoena based on its attorney-client privilege. *See id.* at 2 n.1.

Great Northern further explains that,

[a]s part of its written discovery requests to Great Northern, Total Rx

sought a copy of HSNO's file. Great Northern responded to this request but withheld certain documents pursuant to the attorney-client and work product privileges. Most of these documents are e-mails either sent or received by Great Northern's counsel, Joseph A. Ziemianski, and relate to his representation of Great Northern in this matter. As discussed above, in addition to acting as a consultant during Great Northern's adjustment of the claim, HSNO has also provided assistance to Great Northern and its counsel in connection with its efforts to conduct pre-suit examinations under oath and this lawsuit. These documents are protected from disclosure by the attorney-client privilege since they were made "to facilitate the rendition of professional legal services."

Other documents withheld from HSNO's file are protected from disclosure by the work product privilege. These are comprised of internal communications and communications with Great Northern made in response to or in support of Mr. Ziemianski's representation, as well as internal communications and communications with Great Northern (and HSNO's resulting work product) for purposes of the litigation. These documents were prepared in anticipation of litigation or for trial and are therefore protected from disclosure by the work product privilege, which "protects against the discovery of ... documents and tangible things that have been prepared in anticipation of litigation or for trial by or for a party's representative, including the party's consultant."

*Id.* at 3-4 (footnotes omitted; emphasis removed).

Great Northern "requests the Court to modify and to protect it from Plaintiff Total Rx Care, LLC's deposition on written questions and subpoena duces tecum to non-party Hagen, Streiff, Newton & Oshiro, Accountants, PC to the extent it requires the production of documents protected by the attorney-client and work product privileges, and for such other and further relief to which it may be entitled." *Id.* at 4.

Total Rx, in turn, explains that,

[o]n December 26, 2015, a tornado with winds of 180 miles per hour ripped through North Texas. Sadly, eleven people were killed and 1700 structures suffered damage. Although, thankfully, none of its employees were at work that day after Christmas, Plaintiff's pharmacy facility was among those buildings severely damaged by the tornado.

Plaintiff's pharmacy business went from monthly revenues of

-3-

approximately $10 million to basically zero. Fortunately (or so Total Rx thought), Total Rx was fully insured for up to $25 million in lost business income.

The pharmacy facility took seven months to rebuild. Near the beginning of the facility's restoration period, Defendant retained a well-known independent forensic accounting firm named HSNO "to assist with the adjustment of Total Rx's claim." As part of its work, HSNO issued two reports to Great Northern – one in January 2016 and the other in March 2016. Both reports indicated that Total Rx's business income loss was approximately $5.8 million per month, and thus, after merely four months of restoration, the loss would well exceed Defendant's Policy limits of $25 million.

So, faced with reports from its chosen independent accounting firm that Total Rx's loss of business income would exceed $25 million, Great Northern paid – $6 million.

In the main, this lawsuit arises from Great Northern's failure to pay what is now a 13-month old claim ("claim") in full for covered Business Income losses. Plaintiff alleges, *inter alia*, breach of the insurance contract, and statutory and common law causes of action for bad faith claims handling.

As the Court can readily appreciate, Plaintiff believes that communications between HSNO and Defendant will help the jury better appreciate the depths of Defendant's bad faith claims handling. For the opposite reason, Defendant seeks to keep a tight lid on its communications with the independent accounting firm that it retained "to assist with the adjustment of Total Rx's claim."

Dkt. No. 27 at 1-2 (footnotes omitted).

Total Rx further explains that it "served its First Set of Requests for Production (the 'Requests') on November 2, 2016"; that "[t]he Requests asked for HSNO's file"; that "Great Northern made its initial document production to Total Rx on December 16, 2016"; and that, "[u]ntil this Motion [to Modify], however, Great Northern had not advised Total Rx that it was withholding documents related to its communications with HSNO." *Id.* at 2 (footnotes omitted).

According to Total Rx,

> [i]n order to capture the entirety of HSNO's file, including HSNO's internal communications that Great Northern would not necessarily have, Total Rx issued a deposition by written questions to HSNO on December 22, 2016. HSNO's deadline to respond was February 1, 2017, but HSNO has not responded. Instead, Great Northern filed the Motion, claiming privilege as to 30 HSNO documents. Neither Great Northern nor HSNO makes a case for HSNO to withhold its internal communications, work papers, and analyses, or other documents that are
> not part of Great Northern's claims file. Yet HSNO has produced no such documents to Total Rx.

*Id.* at 2-3. Total Rx reports that it "repeatedly requested that Great Northern produce a privilege log on at least four occasions, starting on December 19, 2016," and that "Great Northern's privilege log, which is attached here as Exhibit 3, was not produced to Total Rx until February 7, 2017." *Id.* at 3.

Total Rx asserts that the "24-page privilege log is flawed as it fails to support Great Northern's privilege position" and that "thirty excerpts from Defendant's privilege log appear to relate to communications with HSNO, and therefore, are presumably the subject of Defendant's Motion. As the Court will see, there is insufficient information to qualify any identified document as being privileged." *Id.* (emphasis removed).

Total Rx contends that, in its Motion to Modify, "Great Northern takes the novel position that communications between it or its lawyer, and its independent forensic accounting firm regarding Total Rx's Claim are privileged"; that, "[a]lthough this argument has no legal merit, it does serve to promote two of Defendant's self-evident interests: (i) delay deposition discovery because depositions cannot start until Defendant produces its entire claims file, and (ii) make an already expensive case that

much more costly for Plaintiff"; that "Great Northern has failed to meet its burden of establishing the existence of any viable privilege attaching to communications between it or its counsel, and HSNO"; and that, "[a]s such, Great Northern's Motion [to Modify] should be denied." *Id.* at 6 (footnote omitted).

Finally, Total Rx asserts that, "although the litigation delay can never be restored, hopefully Total Rx can recover the fees it has incurred in responding to Defendant's baseless Motion" to Modify. *Id.* "Total Rx asks this Court to deny Great Northern Insurance Company's Motion to Modify Subpoena Duces Tecum and for Protective Order, award Total Rx its expenses, including attorneys' fees incurred in responding to the Motion [to Modify], and for such other and further relief in law or in equity to which Total Rx may be justly entitled." *Id.* at 16.

In reply, Great Northern asserts:

· "There is no dispute that Great Northern timely filed a motion to quash or modify the subpoena that Plaintiff served on the forensic accounting firm that Great Northern retained, HSNO."

· "There also is no dispute that Great Northern retained HSNO to assist the company in evaluating complex financial information that Plaintiff submitted as part of its insurance claim."

· "There also is no dispute that Great Northern's motion to quash was directed to a specific category of documents, i.e. privileged communications between Great Northern, HSNO and Great Northern's counsel of record, and any work product that HSNO might have in its possession."

Dkt. No. 29 at 1. According to Great Northern, "[t]hese facts establish that Great Northern timely raised an objection to Plaintiff's subpoena, which calls for the production of privileged documents maintained by a third-party accountant," and "Rule 45 of the Federal Rules of Civil Procedure requires that a subpoena asking a third party to produce privileged materials be quashed or modified, in the absence of waiver or an exception to the privilege." *Id.* at 1, 2.

Great Northern further replies that it "never waived any of the privileged information that HSNO may have in its possession," where "Great Northern served written responses to the discovery that Plaintiff served directly on it, raised the attorney-client privilege and work product doctrine objections to the same types of documents, and served a privilege log identifying those documents" and where, "[t]hen, immediately after Plaintiff served a subpoena on its paid consultant, Great Northern timely filed a limited motion to quash or modify that subpoena to the extent that it calls for privileged communications or work product." *Id.* at 2. Great Northern asserts that Total Rx "cannot establish waiver on these facts." *Id.*

Accordingly, Great Northern contends that "the Court should grant Great Northern's motion because it has established the existence of a privilege in a handful of documents that HSNO possesses that fall within the overly broad scope of Plaintiff's subpoena." *Id.* Great Northern "requests the Court to modify and to protect it from Plaintiff Total Rx Care, LLC's deposition on written questions and subpoena duces tecum to non-party Hagen, Streiff, Newton & Oshiro, Accountants, PC to the extent it requires the production of documents protected by the attorney-client and work

product privileges." *Id.* at 9.

Great Northern further contends that the Court "should reject Plaintiff's request for monetary sanctions." *Id.* at 2. Great Northern maintains that its Motion to Modify "is not a delay tactic" and that Total Rx "ignores that Great Northern already produced over 8,000 pages of documents relating to Plaintiff's insurance claim, including most of the documents that HSNO generated as part of this insurance claim," but "[o]nly approximately thirty (30) documents are involved in this motion." *Id.*

## Legal Standards

I.   <u>Motion to modify subpoena</u>

Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to … produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii).

"Federal Rule of Civil Procedure 45 'explicitly contemplates the use of subpoenas in relation to non-parties' and governs subpoenas served on a third party, such as [HSNO], as well as motions to quash or modify or to compel compliance with such a subpoena." *Am. Fed'n of Musicians of the United States & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (quoting *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)).

Under Rule 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED.

R. CIV. P. 45(c)(2)(A); *see also* FED. R. CIV. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises ... may be set out in a separate subpoena.").

Federal Rule of Civil Procedure 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(d)(2)(B).

Timely serving written objections suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order. *See* FED. R. CIV. P. 45(d)(2)(B)(ii); *Am. Fed'n*, 313 F.R.D. at 44. On the other hand, "[t]he failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." *Am. Fed'n*, 313 F.R.D. at 43 (internal quotation marks omitted).

And "a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Id.* at 46 (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2004), and adopting "the explanations in *Heller* of what is required to make proper objections and

how to properly respond to discovery requests"). Just as, "[a]lthough [Federal Rule of Civil Procedure] 34 governs document discovery from a party and not a non-party, see FED. R. CIV. P. 34(c)," "Rule 34(b)(1)'s reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party," so too "a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same requirements facing a party objecting to discovery under Rule 34." *Am. Fed'n*, 313 F.R.D. at 44, 46.

This means that a non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest; that "general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)"; and that the explanations in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014), of what is required to make proper objections and how to properly respond to discovery requests apply equally to non-parties subject to a Rule 45 subpoena. *See Am. Fed'n*, 313 F.R.D. at 46; FED. R. CIV. P. 34(b)(2)(B)-(C).

The target of a Rule 45 subpoena can also file a motion to quash or modify the subpoena. Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of

privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). The moving party has the burden of proof. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

Federal Rule of Civil Procedure 45(e)(2) governs a non-party's withholding of information on the grounds of privilege or work-product protections and is substantively identical to Federal Rule of Civil Procedure 26(b)(5)'s requirements as to a responding party. *See Am. Fed'n*, 313 F.R.D. at 46. *Compare* FED. R. CIV. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."), *with* FED. R. CIV. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.").

A party, although not in possession or control of the materials sought in a

subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Federal Rule of Civil Procedure 45(d)(3) if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it. *See Ass'n of Am. Physicians & Surgs., Inc. v. Tex. Med. Bd.*, No. 5:07CV191, 2008 WL 2944671, at *1 (E.D. Tex. July 25, 2008). The Court finds – and Total Rx does not dispute – that Great Northern has a sufficient interest to confer standing here where it alleges that documents protected from disclosure by the attorney-client privilege and work-product protection are among those responsive to the Subpoena served on HSNO.

## II.   Motion for protective order

As amended effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED.

R. CIV. P. 26(c)(1).

"[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). And the United States Court of Appeals for the Fifth Circuit recently explained that "[t]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (footnotes and internal quotation marks omitted); *see also id.* at 564 ("Rule 26(d) gives [the] court wide discretion to craft flexible and nuanced terms of discovery." (footnote omitted)).

The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985). "The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5)

-13-

applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

III.   <u>Attorney-client privilege</u>

-14-

The Court has previously explained the standards that govern claims of attorney-client privilege in this diversity case:

> This Court sitting in this diversity case applies the Texas attorney-client privilege. Under Texas law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. The burden is on the party asserting the privilege to demonstrate how each document satisfies these elements. A general allegation of privilege is insufficient to meet this burden. Instead, the proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." In fact, "resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible."

*Curlee v. United Parcel Serv., Inc. (Ohio)*, No. 3:13-cv-344-P, 2014 WL 4262036, at *4 (N.D. Tex. Aug. 29, 2014) (citations omitted).

Great Northern relies on Texas Rule of Evidence 503(b), which extends the attorney-client privilege to communications between the client's lawyer and the client's representative. Under Rule 503(b), "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client: (A) between the client or the client's representative and the client's lawyer or the lawyer's representative; (B) between the client's lawyer and the lawyer's representative; (C) by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the

communications concern a matter of common interest in the pending action; (D) between the client's representatives or between the client and the client's representative; or (E) among lawyers and their representatives representing the same client." TEX. R. EVID. 503(b)(1). "A communication is 'confidential' if not intended to be disclosed to third persons other than those: (A) to whom disclosure is made to further the rendition of professional legal services to the client; or (B) reasonably necessary to transmit the communication." TEX. R. EVID. 503(a)(5).

"The privilege may be claimed by: (1) the client; (2) the client's guardian or conservator; (3) a deceased client's personal representative; or (4) the successor, trustee, or similar representative of a corporation, association, or other organization or entity – whether or not in existence. The person who was the client's lawyer or the lawyer's representative when the communication was made may claim the privilege on the client's behalf – and is presumed to have authority to do so." TEX. R. EVID. 503(c).

Texas Rule of Evidence 503(a)(2) defines a "client's representative" as "(A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2). And Texas Rule of Evidence 503(a)(4) defines a "lawyer's representative" as "(A) one employed by the lawyer to assist in the rendition of professional legal services; or (B) an accountant who is reasonably necessary for the lawyer's rendition of

professional legal services." TEX. R. EVID. 503(a)(4).

"Although the attorney-client privilege extends to communications between 'representatives of the client,' a party invoking the privilege must show that each person privy to the communication: (1) had the authority to obtain professional legal services on behalf of the client; (2) had authority to act on legal advice rendered to the client; or (3) made or received the confidential communication while acting within the scope of his employment for the purpose of effectuating legal representation to the client." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 475 (N.D. Tex. 2004).

## IV.   Attorney work product

The following standards govern Great Northern's assertion of work-product protection:

> [T]he issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law.... The federal work product doctrine, as codified by Federal Rule of Civil Procedure 26(b)(3), provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection. But "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. As the advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."
>
> Among the factors relevant to determining the primary motivation for creating a document are "'the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.

Like all privileges, the work product doctrine must be strictly construed. The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden. Instead, "'a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection.'" The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." In fact, "'resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible.'"

*OrchestrateHR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014) (citations omitted).

"If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006). Rule 26(b)(3) instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED. R. CIV. P. 26(b)(3). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. *See id.* And the work-product rule accords "special protection to work-product revealing the attorney's mental processes."

-18-

*Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). As such, "if the materials sought are opinion work-product then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information." *Brady*, 238 F.R.D. at 443; *accord S.E.C. v. Cuban*, No. 3:08-cv-2050-D, 2012 WL 456532, at *2 & n.3 (N.D. Tex. Feb. 10, 2012).

## Discussion

I.   <u>Attorney-client privilege</u>

Total Rx asserts that "Great Northern has offered no proof by which this Court can conclude that any withheld HSNO communication is protected by the attorney-client privilege" and that Great Northern has not provided sufficient facts by way of detailed affidavits or other evidence to enable the Court to determine whether the privilege exists "and cannot fix its pleading deficiencies by way of reply brief." Dkt. No. 27 at 7.

Total Rx contends that "an insurer's claims file is generally discoverable in litigation – like this – over whether the Defendant insurer lived up to the duty of good faith and fair dealing" but that "Great Northern seeks to shield many of HSNO's communications under the conclusory statement that they 'were made to facilitate the rendition of professional legal services.'" *Id.* (citing *Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*, 3:08-cv-1164-BD, 2010 WL 1839294, at *3, n. 3 (N.D. Tex. May 6, 2010)). According to Total Rx, "[o]ther than its unsupported conclusion that the withheld communications 'were made to facilitate the rendition of professional legal services,' Great Northern has not attempted to prove any of the[] four required elements" that

Texas law requires. *Id.* at 8. "That is, Great Northern doesn't establish that its communications with HSNO were confidential, that the communications facilitated the rendition of legal services, that an independent accounting firm is considered a 'representative' for these purposes or that the privilege has not been waived." *Id.*

In reply, Great Northern contends that Total Rx "disingenuously argues that Great Northern's claim for privilege over the communications between Great Northern's employees, the forensic accounting firm HSNO, and Great Northern's counsel of record is 'novel' and worthy of sanctions" and that, "[i]n making these arguments, [Total Rx] failed to directly challenge the validity of any of the authorities that Great Northern cited in its motion that establish the attorney-client privilege extends to communications with party representatives, particularly accountants." Dkt. No. 29 at 2-3.

"Rather, [Total Rx] argues that Great Northern failed to present sufficient evidence to establish that HSNO was a representative of Great Northern at the time of the communications." *Id.* at 3. But, Great Northern asserts, "HSNO's role as a forensic accounting firm that Great Northern hired to assist it with the investigation into Plaintiff's insurance claim is not disputed. As far as Plaintiff is concerned, HSNO's status as Great Northern's retained consultant for the purposes of evaluating the insurance claim was judicially admitted in the complaint and is binding on Plaintiff":

> Plaintiff alleges that Great Northern retained HSNO to estimate the business income losses that Plaintiff suffered. (Doc. No. 6, First Amended Complaint at ¶8). Plaintiff admits that HSNO's work involves its "unique ability" to "thoroughly assess the facts that are important to the analysis of insurance claims…" *Id.* Accordingly, HSNO reviewed Plaintiff's books

and records as part of the insurance claim, including Plaintiff's 2014 and 2015 financials. *Id.* at 10. Based on that information, HSNO issued a report to Great Northern in January 2016 that provided an estimate of Plaintiff's business losses. *Id.* Great Northern issued an initial $3 million payment to Plaintiff shortly thereafter. *Id.* at ¶ 18.

Following that preliminary report, HSNO and Great Northern requested further information from Plaintiff as part of the claim investigation. *Id.* at ¶¶ 11-14. HSNO issued a second report to Great Northern in March 2016 that refined its calculations. Great Northern then issued a supplemental payment of approximately $2,775,126 in April 2016. *Id.* at ¶¶ 17-18.

*Id.* at 3. "Based on HSNO's admitted role in assisting Great Northern to evaluate Plaintiff's claim for business income losses and its status as a retained forensic accountant, the attorney-client privileged attached to coverage counsel's discussions with Great Northern and HSNO." *Id.*

Great Northern contends that "[t]he law does not require a formal 'employment' relationship" to qualify as a "client's representative" under Rule 503(a)(2)(B) as "any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." *Id.* at 4 (citing *In re Texas Health Res.*, 472 S.W.3d 895, 902 (Tex. App. – Dallas 2015, orig. proceeding); *In re Segner*, 441 S.W.3d 409, 412 (Tex. App. – Dallas 2013, no pet.)); TEX. R. EVID. 503(a)(2)(B). According to Great Northern, "[t]he key is whether the person was involved in the communication for the purposes of assisting the lawyer do his or her job," and, "[w]hen the legal advice involves complex accounting issues, attorneys often need to consult with an outside accountant in order to render his or her opinion. For this reason, an attorney may communicate both with his client and his client's accountants for the purposes of rendering legal

-21-

services without risk of waiving the attorney-client privilege." *Id.* (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125 (E.D. Tex. 2003)).

Great Northern contends that "[i]t is irrelevant who hired the accountant so long as the communications with the attorney facilitated the rendition of the attorney's legal services." *Id.* It notes that Texas Rule of Evidence 503(a)(4) "expressly includes within the ambit of the representatives that may be involved in a communication 'an accountant who is reasonably necessary for the lawyer's rendition of professional legal services,' without any requirement that the lawyer be the one that retained the accountant." *Id.* (quoting TEX. R. EVID. 503(a)(4)(b)).

Great Northern finally replies that, "[u]nlike the cases that Plaintiff cites, HSNO and Great Northern communicated with counsel as part of counsel's provision of legal service, i.e. HSNO's involvement in certain communications was for the purpose of assisting counsel," and that, "[b]ecause HSNO's involvement in those communications facilitated the legal advice that counsel was hired to provide, (which is particularly obvious in light of the complex business interruption claim that HSNO helped calculate), the attorney-client privilege attached to all of their confidential communications." *Id.* at 5 (footnote omitted).

In support of its reply, Great Northern submits and relies on the Affidavit of Joseph A. Ziemianksi. *See* Dkt. No. 29-1. Great Northern contends that Total Rx's "assertion that Great Northern is prohibited from submitting supporting evidence in its reply brief is inaccurate because the Local Rule cited in [the] case [that Total Rx cites] dealt specifically with motions for summary judgment and the limits imposed on

the introduction of evidence in reply." Dkt. No. 29 at 6 n.2.

Total Rx also contends that, although Great Northern "maintains that its attorney sought HSNO's accounting assistance in connection with the examination of the insured under oath ('EUO')," Mr. Ziemianski's "actions in conducting the EUO are treated no differently than had the EUO been conducted by an adjuster," and, "[b]ecause no protection is afforded to any communication by an attorney 'if the attorney is acting in a capacity other than that of an attorney,' Mr. Ziemianski's communications with HSNO relating to or preparing for the EUO are not privileged." Dkt. No. 27 at 9 (quoting *In re Texas Farmers Ins. Exchange¸* 990 S.W.2d 337, 340 (Tex. App. – Texarkana 1999, no pet.)). Total Rx further asserts that Great Northern "has failed to put forth any proof that Mr. Ziemianski was acting in any capacity other than an investigator when he asked HSNO to provide him with its financial analysis germane to Total Rx's insurance claim." *Id.* at 9.

Total Rx then argues that, "[e]ven if Mr. Ziemianski were acting as an attorney when he communicated with HSNO, HSNO is not a representative of Great Northern or Cozen O'Connor so as to come under the protections of the attorney-client privilege," where "[o]nly communications between or amongst the lawyer, client, and/or their representatives are potentially subject to the attorney-client privilege" under Texas Rule of Evidence 501 and where "[i]t is undisputed that HSNO is not a lawyer or a client in this equation." *Id.* at 10 Total Rx maintains that "Great Northern maintained the burden to plead and prove that HSNO acted as a representative of either Great Northern or Cozen O'Connor in order to establish that HSNO's communications with

Mr. Ziemianski were privileged" and that Great Northern failed to do so. *Id.*

Great Northern replies that, although Total Rx "disingenuously claims that counsel's communications with HSNO are not privileged because counsel took an examination under oath and, therefore, was acting as an 'investigator,'" "[t]hat is not the law":

> Plaintiff overstates the opinion in *In re Texas Farmers Ins. Exchange*, 990 S.W.2d 337 (Tex. App. – Texarkana 1999, no pet.). *In re Texas Farmers* held that the facts gathered during the course of an attorney's participation in an examination under oath were not privilege[d]. Yet, at the same time, any opinions, legal conclusions and other communications that were exchanged in his or her capacity as a lawyer are privileged. However, the Court of Appeal ... expressly found that the attorney was acting as an investigator, not an attorney because the attorney stated that he was asked to take the examination under oath and forward the transcripts to the carrier for evaluation. *Id.* at 341. There was no evidence to suggest that the attorney was hired to provide legal advice.

Dkt. No. 29 at 5.

Great Northern contends that "[c]ases since *In re Texas Farmers* have explained that all confidential communications between a client and counsel are privileged so long as the attorney is serving as an attorney." *Id.* at 6 (citing *In re Subpoena of Curran*, No. 3:04-mc-39-M, 2004 WL 2099870, at *2 (N.D. Tex. Sept. 20, 2004)). "Accordingly, any confidential communications with an attorney are privileged regardless of whether the attorney participated in an investigation, so long as the communications were for the primary purpose of providing a legal opinion, other legal services, or assistance in a legal proceeding." *Id.*

Great Northern further asserts, relying on the Affidavit of Joseph A. Ziemianksi [Dkt. No. 29-1], that "[a]ny assertion that counsel of record was serving as a mere

'investigator' when he was retained as coverage counsel is easily disproved," where "[c]ounsel in this action served as coverage counsel for Great Northern during its investigation into the underlying insurance claim" and, "[a]s coverage counsel, his job was to analyze the coverage obligations under the policy that Great Northern issued to Plaintiff and to provide legal input on its policy obligations." *Id.* at 6-7 (footnotes omitted). Great Northern contends that, "[a]fter taking the examination under oath to which Plaintiff refers, his job was to advise his clients about the impact of the testimony on the insurance claim under Texas law" and that, "[a]ccordingly, counsel did not function in a merely investigative capacity." *Id.* at 7. Rather, according to Great Northern, "[c]ounsel was retained for the purposes of providing legal advice," and, "[t]o perform those duties, it was essential to have confidential communications with Great Northern's employees and agents, as well as the accountants at HSNO." *Id.*

Total Rx also contends that, "given Great Northern's Disclosures and lack of proof supporting its Motion [to Modify], Great Northern has not established that HSNO was anything more than an independent accounting firm retained by Great Northern to help with the financial adjustment of Total Rx's claim for business income." Dkt. No. 27 at 11. And, "[a]bsent a 'proven representative' relationship between HSNO and Great Northern or its counsel, no communications involving Great Northern's counsel and HSNO can be withheld under the attorney-client privilege." *Id.* at 11-12. And Total Rx contends that "Great Northern failed to meet [its] burden [of establishing attorney-client privilege] in its Motion [to Modify], and its late-served privilege log (which Great Northern has failed to include in the record) fares no better."

*Id.* at 12.

Great Northern replies that "virtually every case that Plaintiff cites in the opposition deals with motions to compel a party to produce further documents that are in their possession, custody or control" and that "[t]hat is not the issue before this Court," where the Motion to Modify "involves a limited request to limit a subpoena to a non-party, to the extent that the non-party has privileged documents in its files." Dkt. No. 29 at 7.

According to Great Northern,

This distinction makes the need to identify the privileged documents necessarily different. A party that is "withholding" documents is more equipped to provide certain details of the documents because the documents are in their possession. Thus, privilege logs and other more detailed information can be provided more easily. Where the documents are in the possession of another, it is much more difficult to prepare a detailed privilege log or identify all the subject documents with specificity – the documents are not in their possession. Indeed, Rule 45's requirement that a party describe the documents withheld only applies to a party that is "withholding" a document. FRCP 45(e)(2)(A). Great Northern is not withholding any documents in HSNO's possession; Great Northern is asserting a privilege as to documents that are in HSNO's possession.

*Id.* at 7-8.

Nonetheless, Great Northern contends,

there is no question that Great Northern properly preserved the privileges associated with HSNO's files when it served its own discovery responses. (Ex. B, Great Northern's Responses to Plaintiff's First Set of Requests for Production of Documents at Response to Request No. 4). Plaintiff, therefore, cannot establish waiver.

There also is no question that Great Northern served a privilege log that adequately describes the documents at issue because Plaintiff excerpts them directly in the opposition. That log identifies the date of the document, the authors and recipients, the type of document, the

> nature of the privilege being asserted and a general description of the document's contents. That is all that is required to be in a privilege log. *Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, 2014 WL 2558888, at \*3 (N.D. Tex. June 6, 2014) (noting that "[t]ypically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document.") (citing *S.E.C. v. Thrasher*, 1996 WL 125661, at \*1 (S.D.N.Y. Mar. 20, 1996).

*Id.* at 8. And, Great Northern asserts, "the Court should reject any insinuation that the fact that Great Northern served written discovery responses first, and then a more detailed privileged log afterwards has any bearing on this" Motion to Modify, where "[t]here is no requirement that a party serve a privilege log at the same time as the written discovery responses to which they relate" and "[a] party properly raises and preserves a privilege objection by asserting the objection in the written responses, even if the details of the individual documents being withheld are contained in a subsequently served privilege log." *Id.* (citing *Heller*, 303 F.R.D. 466).

Great Northern is correct that HSNO can qualify as a "lawyer's representative" under Rules 503(a)(4) and 503(b) even if Great Northern, and not its counsel, retained HSNO. *See In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 56 n.17 (Tex. 2012) (noting that Rule 503(a)(4) defines a "lawyer's representative" "as either a lawyer's employee or an accountant"); *Schilling v. Mid-Am. Apartment Communities, Inc.*, No. A-14-CV-1049-LY, 2016 WL 3211992, at \*6 (W.D. Tex. June 9, 2016) (noting that a "lawyer's representative" "is defined in Rule 503 as someone 'employed by the lawyer to assist in the rendition of legal services' or 'an accountant reasonably necessary for the lawyer's rendition' of legal services").

But any judicial admission by Total Rx of "HSNO's status as Great Northern's retained consultant for the purposes of evaluating the insurance claim," Dkt. No. 29 at 3, does not amount to admitting that HSNO qualifies as a "client's representative" under Rules 503(a)(2) and 503(b) as either "(A) a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or (B) any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client," TEX. R. EVID. 503(a)(2).

To establish the roles that HSNO and Mr. Ziemianksi were playing and thereby establish that attorney-client privilege attaches to any communications, Great Northern must rely on Mr. Ziemianksi's declaration. But it only submitted that in reply. Even if Great Northern is correct that a party moving to quash a subpoena to a third party does not have the same burden to specifically identify and log particular communications in the third party's possession, custody, or control, Great Northern had the burden to come forward with evidence in support of its privilege claim as part of its motion. And it had the ability to do so through a declaration by Mr. Ziemianksi, its counsel of record, before filing its reply, but it failed to do so.

While Total Rx cited to a case involving summary judgment briefing, here, Great Northern had the burden on making the required showing to establish the claimed privilege and for a modification order and a protective order in its opening motion. It did not do so. And this missing level of detail and information comes too late when included for the first time in a reply. *See Murillo Modular Grp., Ltd. v. Sullivan*, No.

3:13-cv-3020-M, 2016 WL 6565756, at *3 (N.D. Tex. Nov. 2, 2016); *Alvarez v. Aldi (Texas) LLC*, No. 3:13-cv-4122-L, 2014 WL 3557435, at *2 (N.D. Tex. July 17, 2014); *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 505 (N.D. Tex. 2014); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991); *see also T & E Inv. Grp., LLC v. Faulkner*, No. 3:11-cv-0724-P, 2012 WL 12822296, at *2 (N.D. Tex. Sept. 27, 2012) ("Evidentiary appendixes are to be included in motion and response briefs, not reply briefs. In fact, Local Rule 7.1(f), the general reply rule that applies to all civil motions, does not even refer to an evidentiary appendix. (Local R. 7.1(f).) Therefore, this Court generally refuses to consider evidence presented for the first time in a reply brief.").

Accordingly, Great Northern failed to meet its burden to establish that any documents subject to the Subpoena are protective by the attorney-client privilege under Texas law and to meet its burden of showing that the Court should modify the Subpoena under Rule 45(d)(3)(A)(iii) or enter a Rule 26(c)(1) protective order.

## II.   Attorney work product

Total Rx argues that "Great Northern has made no attempt to shoulder its burden of establishing that any document is protected by the work product privilege." Dkt. No. 27 at 13. Total Rx notes that "Great Northern has invoked the work product privilege to withhold 'from HSNO's file …. internal [HSNO] communications and communications with Great Northern made in response to or in support of Mr. Ziemianski's representation as well as internal [HSNO] communications and communications with Great Northern (and HSNO's resulting work product) for

purposes of the litigation.'" *Id.* Total Rx contends that, while withholding 20 HSNO documents on the basis of work product, "Great Northern has made no effort" to meet its burden to (1) establish that the materials at issue were prepared in anticipation of litigation or (2) provide a detailed description of the materials in dispute and state the specific and precise reasons for their claim of protection from disclosure. *Id.*

Further, according to Total Rx, "[b]eyond the fact that Great Northern's Motion [to Modify] fails to give anything more than generalized conclusions as to why the privilege applies, Great Northern's Log entries (which Great Northern failed to include in the record) add nothing in support of its work product claims." *Id.* at 15.

Total Rx further asserts that "15 of the 20 documents Great Northern is withholding on the basis of the work product protection were prepared prior to this suit being filed" and that "an insurer typically has no reason to anticipate litigation prior to the denial of the claim or the initiation of the litigation." *Id.* at 14. According to Total Rx, "Great Northern's Motion [to Modify] fails to address when Great Northern anticipated litigation or present any proof that is was reasonable to anticipate litigation at any point prior to Total Rx bringing this suit." *Id.*

And Total Rx contends that "Great Northern has not met its burden with regard to the five documents prepared after litigation commenced," where "[t]he fact that litigation is pending does not cloak documents related to an insurer's investigation or evaluation of its insured's claim with work product protection." *Id.* According to Total Rx, "Great Northern has offered no support for its contention that HSNO's internal communications or its communications with Cozen O'Connor after litigation

commenced had any purpose other than to further Great Northern's investigation of the claim or coverage determination." *Id.* at 15.

Great Northern replies that, "[o]nce Plaintiff hired counsel on August 12, 2016 (i.e., the attorney that filed this lawsuit), counsel anticipated that litigation might ensure," and, "[a]t that juncture, the federal work product doctrine applied to all the documents that they generated as well." Dkt. No. 29 at 7.

As with the claimed attorney-client privilege, Great Northern failed to come forward with evidence – prior to filing its reply – to establish that the 20 documents at issue (which Great Northern did not even specify in its Motion to Modify) were prepared by its counsel's representative in anticipation of litigation or for trial. Accordingly, here, too, Great Northern failed to meet its burden of showing that the Court should modify the Subpoena under Rule 45(d)(3)(A)(iii) or enter a Rule 26(c)(1) protective order.

III.   <u>Award of expenses</u>

Total Rx contends that, under Rules 26(c)(3) and 37(a)(5), "[w]here, as here, the moving party fails to meet its burden to establish the appropriateness of the protective order sought, the Court should not only order the movant to produce the discovery requested, but must, unless unjust, order the moving party 'to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including its attorney's fees.'" Dkt. No. 27 at 16. According to Total Rx, "[g]iven Great Northern's utter failure to even attempt to meet its burden of supporting its claims of privilege, and the delay and expense Total Rx has experienced as a result, awarding expenses

here is undoubtedly just." *Id.* "Accordingly, Total Rx respectfully requests that this Court order Great Northern to reimburse Total Rx's expenses and attorneys' fees incurred in responding to Great Northern's Motion" to Modify. *Id.*

Great Northern replies that "[s]anctions are not appropriate in this matter," where "[t]he only issue before the Court is whether a third-party subpoena should be quashed or modified since the broad ambit of the requests implicate privileged information" and "Great Northern has not 'withheld' any documents in response to the subpoena" but, rather, "seeks to preserve a legitimate privilege it already asserted in response to its own files, to the extent those documents also are contained in HSNO's files." Dkt. No. 29 at 9. "Great Northern already produced nearly 8,000 pages of documents in response to Plaintiff's discovery request" and therefore maintains that Total Rx's "arguments that this [Motion to Modify] is a 'delay tactic' is simply untrue." *Id.*

The rules governing a motion for a protective order and the burdens imposed on a movant and on a party asserting the attorney-client privilege and work-product protection are well-established, and Great Northern failed to even attempt to meet those burdens in its Motion to Modify. Great Northern has been afforded the chance to be heard – and has replied – as to Total Rx's request for an award of its reasonable expenses under Rule 26(c)(3). The Court finds that the Motion to Modify was not substantially justified and that no other circumstances make an award of expenses unjust. Accordingly, under Rules 26(c)(3) and 37(a)(5)(B), the Court ORDERS that Defendant Great Northern Insurance Company must pay Plaintiff Total Rx Care, LLC

its reasonable expenses, including attorneys' fees, incurred in opposing the Motion to Modify Subpoena Duces Tecum and for Protective Order [Dkt. No. 24].

But Northern District of Texas Local Civil Rule 7.1 requires that parties confer before filing an application for attorneys' fees. Total Rx's counsel and Great Northern's counsel are therefore directed to meet face-to-face and confer about the reasonable amount of these attorneys' fees and costs to be awarded under Rules 26(c)(3) and 37(a)(5)(B).

This face-to-face requirement is not satisfied by a telephonic conference. Any attorney refusing to appear for this meeting or to confer as directed will be subject to sanctions.

By no later than **March 24, 2017**, the parties must file a joint status report notifying the Court of the results of the conference. If all disputed issues as to the amount of attorneys' fees and costs to be awarded to Total Rx have been resolved, Total Rx's counsel must also send an agreed proposed order to the Court at Horan_Orders@txnd.uscourts.gov by **March 24, 2017**.

If the parties do not reach an agreement as to the amount of attorneys' fees and costs to be awarded to Total Rx, Total Rx must, by no later than **April 6, 2017**, file an application for attorneys' fees and costs that is accompanied by supporting evidence establishing the amount of the reasonable attorneys' fees and costs (as described above) to be awarded under Rules 26(c)(3) and 37(a)(5). The fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records, and citations to relevant authorities and shall set forth the

itemized number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (using the "lodestar" method to award attorney's fees under Rule 37).

If an application is filed, Great Northern may file a response by **April 27, 2017**, and Total Rx may file a reply by **May 11, 2017**.

**Conclusion**

For the reasons explained above, the Court DENIES Defendant Great Northern Insurance Company's Motion to Modify Subpoena Duces Tecum and for Protective Order [Dkt. No. 24].

SO ORDERED.

DATED: March 7, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE