IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TOTAL RX CARE, LLC,                 §
                                    §
            Plaintiff,              §
                                    §
V.                                  §          No. 3:16-cv-2965-B
                                    §
GREAT NORTHERN INSURANCE            §
COMPANY,                            §
                                    §
            Defendant.              §

## MEMORANDUM OPINION AND ORDER

Defendant Great Northern Insurance Company has filed a Motion to Abate [Dkt. No. 8] this lawsuit until Plaintiff Total Rx Care, LLC has fully complied with the conditions precedent, as spelled out in Total Rx's insurance policy with Great Northern. *See* Dkt. No. 8 at 1-2. Total Rx filed a response, *see* Dkt. No. 16, and Great Northern filed a reply, *see* Dkt. No. 19.

United States District Judge Jane J. Boyle referred the motion to the undersigned United States magistrate judge for hearing, if necessary, and recommendation or determination. *See* Dkt. No. 40.

The Court DENIES Great Northern's motion for the reasons explained below.

## Background

On December 26, 2015, a tornado caused damage to Total Rx's pharmacy facility (the "Pharmacy"). Total Rx notified its insurer, Great Northern, of the damage. Total Rx's policy with Great Northern (the "Policy") covers losses due to tornado damage,

including up to $25 million of Business Income and Extra Expense coverage.

Throughout January 2016, Great Northern requested and received information from Total Rx, including its financial information.

Great Northern also retained a forensic accounting firm, Hagen, Streiff, Newton & Oshiro, Accountants, PC ("HSNO"), to estimate the amount of Business Income Total Rx lost due to the tornado. HSNO prepared reports in January and March 2016 to determine Total Rx's Business Income loss. Both reports concluded that Total Rx's Business Income Loss exceeded $35 million through June 2016.

While adjusting the claim, Great Northern learned that Total Rx lost its ability to process prescriptions insured through Blue Cross/Blue Shield ("BC/BS"). Total Rx's contract with BC/BS accounted for 50% of Total Rx's income in 2015.

Great Northern subsequently asked to conduct an examination under oath ("EUO") of Steve Solomon to help it process the claim. In a letter to Mr. Solomon and Total Rx's then-CEO, Michael Nguyen, Great Northern argued that Total Rx was required to make Mr. Solomon and Mr. Nguyen available because the Policy allows it to take an EUO of any "insured."

Mr. Solomon is an outside consultant who advises Total Rx with the preparation and adjustment of the claim at issue and has a financial interest in the resolution of the claim. At the time that the tornado hit, he also owned an interest in Messorio Healthcare Services, LLC, which was the sole owner of Total Rx, and was more involved in processing the claim.

Total Rx elected to make its current CEO, Kevin Kuykendall available for an

EUO instead. His EUO took place on September 9, 2016. There, Mr. Kuykendall explained that the revenue from BC/BS would be easily replaced and that anticipated 2016 revenues would not diminish from 2015. *See* Dkt. No. 16 at 10 (citing Dkt. No. 16-7 at 29). He then explained that, to his knowledge, Total Rx's 2016 projected revenues did not deduct the revenue it received from BC/BS – although he conceded that Mr. Solomon was "[p]robably" the better person to ask. *See id.* at 16.

During and after the EUO, Great Northern also requested a copy of BC/BS's termination letter, "all documents that reflect how Total Rx planned to replace the revenue from [BC/BS] that it had lost," and "all documents that support the financial summaries produced [by Total Rx] on September 8, 2016." Dkt. No. 8 at 8. It contends that the Policy also requires Total Rx to turn over these documents. The Policy provides that, in the event of loss or damage, the insured must "[p]ermit [Great Northern] to inspect the property and [the insured's] books and records." *Id.* at 5.

Total Rx filed this lawsuit before fully complying with Great Northern's requests. It explains that "[t]he only requested information that has not been produced to Great Northern is confidential in nature and requires a Protective Order" – either because those documents are subject to a confidentiality clause or because they contain third-party protected health information ("PHI") that is protected by the Health Insurance Portability and Accountability Act ("HIPAA").

Total Rx had asked Great Northern to enter into a Protective Order, but Great Northern refused. Total Rx then filed a motion for a protective order governing the production of confidential information in the case, *see* Dkt. No. 7, which the Court has

granted, *see* Dkt. Nos. 22 & 23.

Through its Motion to Abate, Great Northern asks "the Court to abate this lawsuit until 45 days after Total Rx has made available for examination under oath Steve Solomon and anyone else whose examination is reasonably required and after Total Rx provides any and all documents reasonably requested by Great Northern." Dkt. No. 19 at 6-7. It argues that Total Rx was obligated to do so as a condition precedent to filing this lawsuit, pursuant to Total Rx's Policy.

Total Rx disagrees. It contends that it has already satisfied the conditions precedent to filing this lawsuit, which do not include either making Steve Solomon available for an EUO or producing the documents at issue without a protective order.

The Court now concludes that Great Northern's Motion to Abate should be denied for the reasons explained below.

## Legal Standards

Insurance policy provisions that set out conditions precedent to sustaining a suit on the policy are valid. *See Wofford v. Allstate Ins.* Co., No. 3:04-cv-2699-M, 2005 WL 755761, at *3 (N.D. Tex. April 4, 2005) (citing *State Farm General Ins. Co. v. Lawlis*, 773 S.W.2d 948, 949 (Tex. App.– Beaumont. 1989)). As such, "the proper remedy for failure to satisfy an insurance policy's conditions precedent is abatement of the lawsuit." *Id.*

While "[a] 'motion to abate' is not expressly authorized by federal statute or rule," "federal courts have authority to entertain such preliminary motions." *PJC Bros.,*

*LLC v. S&S Claims Servs., Inc.*, 267 F.R.D. 199, 200 n.2 (S.D. Tex. 2010). The decision to abate an action is "largely a matter of judicial discretion, 'which must be exercised in light of the policy against unnecessary dilatory motions.'" *Id.* (quoting 5C WRIGHT & MILLER, FED. PRAC. & PROC. § 1360 (3d ed. 2004); *see also* 28 U.S.C. § 2105 (precluding appellate reversal for error in ruling upon matters in abatement which do not involve jurisdiction).

In deciding whether Total Rx has complied with the conditions precedent under the Policy, the Court is guided by Texas' rules of interpretation. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts."). "[T]he [C]ourt's primary concern is to give effect to the written expression of the parties' intent." *Id.* The Court will consider the entire instrument so that none of the provisions will be rendered meaningless. *R & P Enters. v. LaGuarta, Garvel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). "When a contract is unambiguous [the Court] will enforce it as written." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) (citing *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). But if a contract is ambiguous – that is, if it is reasonably susceptible to conflicting interpretations – the ambiguity is "construed against the drafter." *Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 101 (Tex. App.–Houston 2015) (citing *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990)). In an insurance policy, this means that "an ambiguous policy is construed against the

insurer." *Id.*

## Analysis

Great Northern contends that Total Rx has failed to comply with the conditions precedent in the Policy by refusing to make Steve Solomon available for an EUO and failing to produce numerous documents that it has requested. Total Rx disagrees. It appears to argue that Great Northern waived its right to seek compliance with any condition precedent by not timely making its requests. It also argues that the Policy does not require it to make Mr. Solomon available for an EUO or produce the documents at issue.

I.    Great Northern did not waive its right to seek compliance with the conditions precedent in the Policy.

Total Rx appears to argue that Great Northern waived its right to ask Total Rx for additional information to help it investigate the claim. It notes that the Prompt Pay Act, *see* TEX. INS. CODE § 542.055 et seq., provides that insurers are to process and pay any claims within a set number of days, *see* TEX. INS. CODE § 542.055(a)(3) (setting time frame to process and pay claims). It contends that the Prompt Pay Act required Great Northern to have fully processed and paid the claim in full by February 2016. And, because Great Northern did not seek to conduct an EUO of Mr. Solomon or the documents in question until months after this date, Total Rx appears to argue that Great Northern waived its right to require compliance with the conditions precedent in the Policy to the lawsuit. *See* Dkt. No. 16 at 9-10 (noting that "[c]ontrary to the Prompt Pay Act's 15-day requirement, Great Northern waited 229 days to request an

examination under oath" and "229 day sto request Total Rx's contracts with payors").

Total Rx presumably grounds this position in the principle that the Policy must be interpreted against the backdrop of applicable law. *See Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 475 (Tex. 2016) ("As a general rule, parties in Texas may contract as they wish so long as the agreement reached does not violate positive law or offend public policy.").

The Court disagrees with Total Rx's apparent line of reasoning. The Prompt Pay Act makes clear that – after promptly making an initial request for all items it reasonably believes it needs at that time – the insurer may make additional requests at any point during the investigation as needed. *See* TEX. INS. CODE § 542.055. The Prompt Pay Act also appears to expect that an insurer would continue its investigation even after the deadlines to process and pay the claim have passed. By so doing, the Prompt Pay presumably allows an insurer the ability to make additional requests for items and information in support of any late-running investigations.

This is clear when considering the remedies that the Prompt Pay Act provides for violations. The remedies provision only penalizes those insurers who are actually "liable for a claim under an insurance policy," *id.* § 542.060, and does so by charging them "interest on the amount of the claim at a rate of 18 percent a year as damages," *id.* In other words, the Prompt Pay Act not only recognizes that insurers will continue investigating a claim after they have missed the deadlines imposed but also includes incentives for an insurer to continue its investigation, promptly finish, and ultimately reach the right conclusion.

Total Rx's position that the Prompt Pay Act prohibits insurers from seeking additional information after the deadline to process and pay a claim has passed, if accepted, would undermine these goals. The Prompt Pay Act does not limit the time in which Great Northern can invoke the Policy to seek information to support its investigation of the claim.

II.    **The Policy does not require Total Rx to make Mr. Solomon available for an EUO as a condition precedent to filing suit.**

The Policy makes it a condition precedent for an insured to "[p]ermit [Great Northern] to examine any insured under oath, outside the presence of any other insured at such times as may be reasonably required, about any matter relating to this insurance or the claim." *See* Dkt. No. 9 at 5-6.

The parties agree that Total Rx is the "insured" and that "a business entity like Total Rx can only be examined through its people." Dkt. No. 8 at 7; Dkt. No. 16 at 12.

But they disagree on whether Mr. Solomon constitutes an "insured" who is "reasonably required" to make himself available to an EUO on Total Rx's behalf. Great Northern argues that Mr. Solomon constitutes an "insured" because, at the time of the tornado, Mr. Solomon owned a minority interest in Total Rx's parent company and was involved in managing the claim. Great Northern adds that Mr. Solomon, in fact, "continues to have a financial interest in the claim such that he is entitled to a percentage of anything paid on the claim." Dkt. No. 8 at 7. Total Rx responds that Mr. Solomon is not an "insured" because, by the time Great Northern sought to examine him, he only "served as an outside consultant to assist Total Rx with the preparation

and adjustment of the Claim" and "[was] not an officer or employee of Total Rx." Dkt. No. 16 at 12.

The Court concludes that Total Rx did not need to make Mr. Solomon available for an EUO because he is not an "insured." As such, it does not address the parties' arguments on whether Mr. Solomon's EUO was also "reasonably required." *See* Dkt. No. 8 at 5 (including the relevant excerpts of the conditions precedent provision, which only requires an insured to make itself available for an EUO "at such times as may reasonably be required").

By entering into the Policy, Total Rx agreed to make itself, the "insured," available for an EUO. Because contracts are intended to fulfill the reasonable expectations of the parties, Total Rx presumably only agreed to duties and terms that it could be reasonably expected to effectuate. *See Giant Eagle Inc. v. Excentus Corp.*, No. 3:14-cv-1195-B, 2014 WL 12531173, at *7 (N.D. Tex. Aug. 2, 2014) (quoting *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 7. F. Supp. 3d 678, 683 (S.D. Tex. 2014) ("A court may 'interpret [a contract] to fulfill the reasonable expectations of the parties'")).

Mr. Solomon only constitutes an "insured" if he is among the class of persons who is so closely connected to Total Rx such that Total Rx could be expected to compel his attendance to an EUO as its human proxy. And he is not among that class of persons. The way that courts have interpreted Federal Rule of Civil Procedure 45 is illustrative of how to determine who Total Rx can be expected to compel to attend an EUO on its behalf. Rule 45(c) provides that a subpoena may command a person to attend a trial, hearing or deposition under certain conditions "if the person is a party

-9-

or a party's officer." Fed. R. Civ. P. 45(c)(1)(B).

Courts generally presume that, under Rule 45, a court's power to subpoena a corporate "party" extends only to that entity's officers, directors, or managing agents – in other words, its high-level employees or those with a similar type of relationship to it. *See Harrison v. Wells Fargo Bank, N.A.*, No. 3:13-cv-4682-D, 2016 WL 1392332, at *7 (N.D. Tex. April 8, 2016) (quoting *Jackson v. Stevens Transp., Inc.*, No. 3:14-cv-1416-M, 2015 WL 221087, at *2 (N.D. Tex. Jan. 15, 2015) for the proposition that '[a] corporate employee who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. Rather, the employee is treated as any other non-party'"); *see also* Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2107 (3d ed.) ("Rule 30(a) provides that the attendance of witnesses at the taking of a deposition may be compelled by subpoena as provided in Rule 45. Though Rule 30 does not say so expressly, a subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party.").

Courts appear to make this presumption for two reasons. First, the corporate party, as the witness' employer, presumably controls the witness and can compel the witness to appear. *See Vargas v. Seamar Divers Intern., LLC*, No. 1980001, 2011 WL 198001, at *5 (E.D. Tex. May 20, 2011). As a Texas state court explained in interpreting the state's analogous rule, "the employee-nonparty-witness is required to appear because his employer has the ability to establish the terms of employment, to fire him, to control his pay, and to decide whether he receives a future promotion or

demotion." *In re Reaud*, 286 S.W.3d 574, 580 (Tex. App.–Beaumont 2009, orig. proceeding).

Second, a high level employee or managing agent is uniquely situated to serve as a human proxy for his or her corporate employer. This is because these individuals can presumably exercise discretion in acting on the corporation's behalf, be "depended on to carry out the employer's directions," and be expected to "identify him or herself with the interests of the corporation as opposed to the interests of the adverse party." *Jackson*, 2015 WL 221087 at \*3 (quoting *In re Honda American Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996) to summarize the factors considered to determine whether an individual is a managing agent).

Accordingly, Mr. Solomon is only someone whom the parties could presume to speak on Total Rx's behalf if he is either Total Rx's officer, director, or managing agent. *See Palace Cafe v. Hartford Fire Ins. Co.*, 97 F.2d 766, 769 (7th Cir. 1938) (finding that "[t]he policies provide for examination of the assured," which "includes only its corporate agents, not an independent contractor or attorney").

Mr. Solomon is not a high-level employee. In fact, he is not a Total Rx employee at all. He is an outside consultant who, on a fee basis, advises Total Rx with the preparation and adjustment of this claim. On these facts, the Court cannot find that his relationship with Total Rx is such that Total Rx could compel him to attend an EUO or that he would necessarily be someone who could appropriately speak on Total Rx's behalf.

Great Northern notes that Mr. Solomon previously had a minority ownership

interest in Total Rx's parent company and was more actively working on the claim at some point in time. *See* Dkt. No. 8 at 7 (noting that Mr. Solomon had been authorized by Total Rx's then CEO to negotiate and manage the insurance claim). But the Court does not look at the nature of Mr. Solomon's former relationship with Total Rx to determine whether Total Rx violated the conditions precedent clause by filing suit. *See Green v. St. Paul Fire & Marine Ins. Co.*, 691 F. Supp. 700, 703 (S.D.N.Y. 1988) (finding that the corporation was not required to make a former director and officer available for an EUO under a similar provision since he "had submitted his resignation more than five months" before "St. Paul sent its demand for examination"). It looks at his relationship with Total Rx at the time that Great Northern made its request. By that point, Mr. Solomon had relinquished his ownership interest in Total Rx's parent company and was only assisting Total Rx process the claim in an advisory role. *See* Dkt. No. 16-7 at 8 (explaining that Mr. Solomon is not still managing the project and that he left the company in March 2016, months before Great Northern first sought to examine him).

Great Northern admittedly could have directed Mr. Solomon to testify and simply hoped for compliance. But "the policy does not state that the insured has a duty to 'direct' any third party, agent or not, to submit to examination under oath," and "no such duty is implied." *Tenn. Farmers Mut. Ins. Co. v. Bradford*, No. 2A01-9711-cv-284, 1999 WL 528835, at *6 (Tenn. Ct. App. July 23, 1999).

In short, the Policy's terms indicate that Great Northern was not required to make Mr. Solomon available for examination.

Further, "even if the Court were to find the term 'any insured' to be ambiguous" – such that it could alternatively refer to any of the insured's independent contractors or former stakeholders – "any ambiguity in the Policy must be decided 'strictly against [Great Northern] and liberally in favor of [Total Rx].'" Dkt. No. 16 at 12 (citing *Thomas v. Stronger*, No. 3-15-cv-1937-B, 2016 WL 6565862, at *3 (N.D. Tex. Nov. 2, 2016)); *accord Liberty*, 483 S.W.3d at 101 (citing *Gonzalez*, 795 S.W.2d at 737)). Great Northern drafted the contract. If it wanted the right to compel an insured to make available for an EUO all of its independent consultants or all those with a financial interest in the claim, it could have clearly so stated. *See, e.g.*, *West v. State Farm Fire and Cas. Co.*, 868 F.2d 348, 351 n.1 (9th Cir. 1989) (discussing a policy that requires the policy holder to "produce employees, members of the insured's household or others for examination under oath").

Like the few other courts that have addressed this issue, the Court concludes that a provision requiring an "insured" to make itself available for an EUO does not require the insured to make a third-party contractor (who is not a managing agent) available for examination. *See, e.g.*, *Florida Gaming Corp.*, 502 F. Supp. 2d at 1261; *El Dorado Towers Condominium Ass'n, Inc. v. QBE Ins. Corp.*, 717 F. Supp. 2d 1311, 1319-20 (S.D. Fla. 2010); *see also Palace Cafe*, 97 F.2d at 769 (finding that a corporate insured could not make an independent contractor available for an EUO in its place when the policy called for an examination of the assured, meaning the party's corporate agents).

III.   Total Rx did not violate the Policy's cooperation clause by responding to Great
       <u>Northern's letter to Mr. Solomon.</u>

Great Northern argues that, even if Total Rx was not contractually obligated to produce Mr. Solomon for an EUO, Total Rx still breached the Policy's cooperation clause. *See* Dkt. No. 19 at 6. The cooperation clause makes it a condition precedent for an insured to, in the event of loss or damage, "[c]ooperate with us in the investigation, settlement or handling or any claim." Dkt. No. 8 at 5.

The duty to cooperate set forth in the Policy "is a standard provision in insurance policies and is 'intended to guarantee to insurers the right to prepare adequately their defense on questions of substantive liability.'" *Mid-Continent Casualty Co. v. Petroleum Solutions, Inc.*, No. 4:09-422, 2016 WL 5539895, at *14 (S.D. Tex. Sept. 29, 2016) (quoting *Quotom Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 468 (5th Cir. 2002)). "Cooperation clauses in insurance contracts 'fulfill the reasonable purpose of enabling the insurer to obtain relevant information concerning the loss while the information is fresh.'" *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 F. App'x. 162, 165 (5th Cir. April 30, 2012) (quoting *Holden v. Connex-Metalna Mgmt. Consulting*, No. Civ.A.98-3326, 2000 WL 1741839, at *2 (E.D. La. Nov. 22, 2000)). A "cooperation clause is violated where the insured's conduct is not 'reasonable and justified under the circumstances.'" *Mid-Continent Casualty Co.*, 2016 WL 5539895, at *16 (quoting *Frazier v. Glens Falls Indem. Co.*, 278 S.W.2d 388, 391 (Tex. Ct. App. – Fort Worth 1955)).

Great Northern notes that it "contacted Mr. Solomon directly asking to examine

him under oath" and that Total Rx thwarted this attempt by writing on August 29, 2016 that "it would produce Mr. Kuykendall instead." Dkt. No. 19 at 6. Great Northern contends that Total Rx violated the cooperation agreement by so doing.

The Court disagrees. Total Rx's response to Great Northern's request was reasonable and justified under the circumstances. Great Northern correctly notes that it directly contacted Mr. Solomon to ask him to subject himself to an EUO. But, as explained in its letter to Mr. Solomon, it did so only because it believed that he was an "insured" who Total Rx was required to make available for an EUO. *See* Dkt. No. 8-2 at 5. In other words, Great Northern's request was based on an interpretation of Total Rx's Policy with which Total Rx did not agree and that necessarily implicated Total Rx's duties to Great Northern. In this context, it was reasonable for Total Rx to respond to Great Northern's request by clarifying its legal position and then – in an effort to reasonably cooperate with Total Rx – make its CEO available for an EUO, instead. Great Northern does not contend or demonstrate that Total Rx did anything more to "thwart[] Great Northern's attempt to examine or, at the very least, interview Mr. Solomon about the claim" but rather speculates that "[c]learly Total RX was speaking for Mr. Solomon then as it does now since Great Northern never received a response from Mr. Solomon himself." Dkt. No. 19 at 6. That does not a violation of a cooperation clause make.

The result might be different if Great Northern's request did not implicate Total Rx's legal rights or if Total Rx's objection was substantially unfounded. *Cf. Celanese Corp. v. OneBeacon Am. Ins., Co.*, No. 3:14-cv-3985-L, 2015 WL 3939399, at *1 (N.D.

Tex. June 25, 2015) (granting attorney's fees and costs because "Defendants' basis for removing this case to federal court was not objectively or subjectively reasonable"). But that is not the case here. Total Rx put forth a reasonable legal argument as to why Great Northern could not require it to make Mr. Solomon available for an EUO that, for the reasons explained above, the Court generally agreed with.

Total Rx did not violate the cooperation clause in the Policy.

IV.    **The Policy does not require Total Rx to make any additional persons available for an EUO at this point.**

Great Northern also asks the Court to abate the action until Total Rx "has made available for an [EUO] ... anyone else whose examination is reasonably required." Dkt. No. 8 at 10. The Court denies this request to the extent Great Northern now wants to examine any Total Rx employees whom it did not ask to examine prior to the initiation of this suit.

If Great Northern wanted to invoke its right to conduct an EUO of any of Total Rx's employees, it was required to do so before Total Rx filed suit. But this request was "not made until *after* the lawsuit was brought." *PJC*, 267 F.R.D. at 201 (emphasis in original). Great Northern's attempt to invoke a condition precedents provision is unavailing as a result. After all, "on the date this suit was filed, plaintiff could not possibly have been non-compliant [with the conditions precedent provision,] because no request had yet been made." *Id.*

V.    **The Policy does not require Total Rx to produce documents protected by HIPAA or subject to a confidentiality provision.**

Great Northern contends that the Policy requires Total Rx to produce a set of

documents that it requested prior to bringing suit. Great Northern specifically "requested a copy of BC/BS's termination letter," "'all documents that reflect how Total Rx planned to replace the revenue from [BC/BS] that it had lost,'" and "all documents that support the financial summaries produced [by Total Rx] on September 8, 2016." Dkt. No. 8 at 8 (quoting Dkt. No. 8-1 at 9). It contends that, even though these documents are relevant, "Total Rx has provided nothing in response to these requests." *Id.* at 9.

Total Rx counters that Great Northern's request is "*per se* unreasonable" because the "requests s[eek] personal medical information protected by HIPAA or contracts bearing confidentiality clauses" and "Great Northern refuses to enter into any Protective Order." Dkt. No. 16 at 19 (emphasis in original).

The Court has since granted Plaintiff's motion for a protective order to govern the production of confidential items in this case. *See* Dkt. No. 22. But Defendant's motion to abate is based on its contention that abatement is warranted because Plaintiff failed to comply with conditions precedent prior to filing suit. The Court will examine whether Total Rx was required to produce these documents at that moment in time – before the Protective Order was entered.

"As a general rule, parties in Texas may contract as they wish so long as the agreement reached does not violate positive law or offend public policy." *Philadelphia Indem. Ins. Co.*, 490 S.W.3d at 475 (citing *In re Prudential Ins. Co. Of Am.*, 148 S.W.3d 124, 129 (Tex. 2004)). "While there is no standard definition or test that applies to all cases, courts generally find a contract violates public policy if it is illegal,

or inconsistent with or contrary to the best interest of the public." *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 728 (Tex. Ct. App. – Dallas 2004) (citing *Ranger Ins. Co. v. Ward*, 107 S.W.3d 820, 827 (Tex. Ct. App. – Texarkana 2003)). "When two constructions of a contract are possible, preference will be given to that which does not result in violation of law," *Lewis v. Davis*, 145 Tex. 468, 472 (Tex. 1947) (citing *Great Northern R. Co. v. Delmar Co.*, 283 U.S. 686 (1931)), offend public policy, or both.

The conditions precedent provision offends public policy to the extent that it requires Total Rx to, before filing suit, produce documents containing PHI either without redaction or without cooperation from Great Northern to ensure that this information shall be protected to the extent HIPAA requires.

HIPAA generally requires that a covered entity seek a patient's permission before releasing his or her PHI. *See* 45 C.F.R. § 164.506. But HIPAA relaxes those requirements when a person's PHI may need to be revealed in the course of a judicial or administrative proceeding. *See generally id.* § 164.512. In this context, an individual's PHI can be produced by court order or if the covered entity receives certain assurances from "the party seeking the information." *Id.* § 164.512(e). These assurances include that reasonable efforts have been made by the requesting party to either "secure a qualified protective order" or to ensure that "the individual who is the subject of the [PHI] that has been requested has been given notice of the request." *Id.*

These provisions reflect HIPAA's policy interest in ensuring that – with the assistance of the party seeking the information – a patient's privacy is protected without unnecessarily impeding an administrative or judicial proceeding. Great Northern's position that the Policy requires Total Rx to produce these documents to initiate a lawsuit – without Great Northern's assistance in securing the privacy of the information therein – undermines this policy interest.

The Policy would also offend public policy to the extent that it requires Total Rx to produce payor contracts subject to a confidentiality clause without a protective order in place. Great Northern argue that it is entitled to these documents, even if Total Rx is required to breach another contract to fulfill its obligations. The Court disagrees. Great Northern's request, if carried through, would potentially make it subject to a claim for tortious interference with contract. *See Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 140 (Tex. App. – Waco 2004, pet. denied) (citing *Juliette Fowler Homes v. Welch Assocs.*, 793 S.W.2d 660, 665 (Tex. 1990) ("In Texas, a party bringing suit for tortious interference with a contract must prove four elements: (1) a contract subject to interference exists; (2) the act of interference was willful and intentional; (3) the intentional act proximately caused the plaintiff's damage; and (4) actual damage or loss occurred.")). A contractual provision would offend public policy to the extent that its enforcement may result in intentional tortious conduct. *Cf. Wessinger v. Fire Ins. Exchange*, 949 S.W.2d 834, 840 (Tex. App. – Dallas 1997, no writ) (finding that it is against public policy for an insurer to allow a party to insure itself against intentional wrongful conduct).

VI.    The Policy required Total Rx to produce the documents that it withheld prior
       to bringing suit, though abatement is still not warranted.

Great Northern notes that Total Rx had withheld at least some requested documents until it filed the Motion to Abate even though Great Northern had requested this information before the suit commenced. The Court agrees that Total Rx was required to produce these documents prior to filing suit. Great Northern's document requests are relevant to the claim. Great Northern discovered information suggesting that BC/BS cancelled its contract with Total Rx to fill prescriptions. It subsequently sought related financial documents to determine whether this impacted the projected income that Great Northern lost due to the hurricane, which in turn, might impact how much Great Northern would have to pay on the claim.

But Great Northern admits that it received these documents shortly after it filed the Motion to Abate. Great Northern has not demonstrated that it would suffer hardship or inequity in moving forward with the case. The Court has a duty to "secure the just, speedy, and inexpensive determination of every action" and will not grant a motion to abate simply because Great Northern received some documents a bit later than expected. *See PJC*, 267 F.R.D. at 202 (denying a motion to abate, in part, because "the abatement sought here would be contrary to the cardinal principle that the rules of procedure be administered 'to secure just, speedy, and inexpensive determination of every action.' FED. R. CIV. P. 1")); *see also* WRIGHT & MILLER, FED. PRAC. & PROC. § 1360, at 78 (3d ed. 2004) ("'[A]lthough a given motion might raise a valid point, unless its determination would have the effect of promoting 'the just,

speedy, and inexpensive determination' of the action as mandated by Rule 1, the district court should probably deny the application and thereby avoid any delay.'").

## Conclusion

For the reasons explained above, the Court DENIES Defendant Great Northern Insurance Company's Motion to Abate [Dkt. No. 8].

SO ORDERED.

DATED: April 14, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE