UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOTAL RX CARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-2965-B |
| | § | |
| GREAT NORTHERN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Great Northern Insurance Company's Amended Motion to Dismiss for Failure to State a Claim. Doc. 12. For the reasons that follow, the Court holds that Defendant's Motion is **GRANTED in part** and **DENIED in part**.

## I.

## BACKGROUND

A.    *Factual Background*[1]

This case involves an insurance dispute. Plaintiff Total Rx Care is the named insured under a policy issued by Defendant Great Northern (the Policy), covering the period between September 4, 2015 and September 4, 2016. Doc. 6, Pl.'s Am. Compl. ¶ 5. Plaintiff owned and operated a pharmacy. *Id.* Under the Policy, Defendant allegedly promised to provide $25 million of Business Income and Extra Expense coverage for the pharmacy. *Id.* ¶ 6. In December 2015, the pharmacy was

---

[1] The Court draws its factual account from Plaintiff's Amended Complaint as well as from the parties' briefing on the Motion to Dismiss before the Court. Any contested facts are noted as such.

hit by a tornado, which resulted in wind and water damage and left the pharmacy non-operational. *Id.* ¶ 5. Plaintiff asserts that while it paid the full premium, Defendant failed to fully reimburse Plaintiff for its losses up to the Policy limits. *Id.* ¶ 6.

Shortly after the tornado, Defendant's adjuster inspected the pharmacy. *Id.* ¶ 7. Defendant also retained a forensic accounting firm, HSNO, to estimate the amount of income that would be lost as a result of the tornado's damage. *Id.* ¶ 8. According to Plaintiff, HSNO concluded that Plaintiff's business income loss was expected to exceed $35 million. *Id.* ¶ 10. HSNO issued a second report months later, refining its calculation, and maintained that the loss exceeded the Policy limit of $25 million. *Id.* ¶ 17. According to Plaintiff, it has not been fully reimbursed as less than $6 million has been paid. *Id.* ¶ 18.

Plaintiff consulted with a contractor to rebuild the pharmacy and received an estimate of $400,000. *Id.* ¶ 19. According to Plaintiff, Defendant's adjuster urged Plaintiff to use Defendant's contractor, Belfor Property Restoration, instead and promised to pay any cost increase to induce Plaintiff's agreement. *Id.* Specifically, Plaintiff alleges that Defendant promised to pay the cost to the extent it exceeded $400,000 (the Belfor Promise). *Id.* Defendant's contractor performed the work once it received Defendant's approval of the pricing. *Id.* The cost of rebuilding exceeded $400,000 by $905,233.[2] *Id.* Defendant refused to pay the amount and Plaintiff placed a lien on the property as a result. *Id.* Plaintiff's landlord gave notice that the lien breached its lease and demanded its removal. *Id.* Plaintiff forwarded the notice to Defendant but Defendant refused to pay. *Id.*

Plaintiff initially filed suit in state court, and the case was removed to this Court on October

---

[2]The Court is unclear as to whether the total cost was $905,233 in total or that the total cost exceeded $400,000 by $905,213, meaning the total cost would be $1,305,233.

21, 2016. Doc. 1, Notice of Removal. Plaintiff then filed its Amended Complaint and brought the following claims: (1) a request for declaratory judgment; (2) breach of contract; (3) violations of the Texas Insurance Code; (4) violations of the Texas Deceptive Trade Practices Act; (5) breach of the common law duty of good faith and fair dealing; (6) fraud; (7) fraudulent inducement; (8) promissory estoppel; and (9) pattern and practice. Doc. 6, Pl.'s Am. Compl. ¶¶ 33–50. Defendant, after filing a Motion to Dismiss (Doc. 9), filed its Amended Motion to Dismiss. Doc. 12. Plaintiff filed a Response (Doc. 17), and Defendant filed a Reply (Doc. 21). Thus, the issue is ripe and the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

Defendant moves to dismiss Plaintiff's claims of: (1) fraud; (2) fraudulent inducement; (3) pattern and practice; (4) promissory estoppel; and (5) its claim under the Texas Deceptive Trade Practices Act. Doc. 13, Def.'s Br. in Supp. of Am. Mot. to Dismiss 1–2 [hereinafter Def.'s Br.]. The Court examines each in turn.[3]

### A.     Fraud

Plaintiff alleges that it consulted with a contractor to rebuild the pharmacy for about $400,000. Doc. 6, Pl.'s Am. Compl. ¶ 47. According to Plaintiff, Defendant's adjuster urged Plaintiff to use Defendant's contractor instead, promising to pay any cost increase to induce Plaintiff's

---

[3]Plaintiff's Amended Complaint combines the claims for fraud, fraudulent inducement, and promissory estoppel into one section. Doc. 6, Pl.'s Am. Compl. ¶¶ 47–49. Defendant's Motion to Dismiss, by contrast, addresses each of the three individually. Doc. 13, Def.'s Br. 5, 10–11. The Court likewise addresses each individually.

agreement. *Id.* Defendant's contractor performed the work once it received Defendant's approval of the pricing. *Id.* Plaintiff claims it "would not have entered into a [contract] but for [Defendant's] promise to pay the differential." *Id.* Plaintiff also states that Defendant was either a third-party beneficiary or implied party to the contract. *Id.* According to Plaintiff, these facts show that Defendant made a misrepresentation that was: (1) material; (2) false; (3) known to be false; (4) intended to be acted upon; (5) relied upon; and (6) caused injury. *Id.* ¶ 48. As a result, Plaintiff alleges that Defendant is estopped from denying its responsibility for the difference in cost. *Id.*

Under Texas law, the elements of common law fraud are: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party; and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).[4]

Defendant's sole challenge to Plaintiff's fraud claim is that it is barred by the "independent injury doctrine." Doc. 13, Def.'s Br. 11–12. The independent injury doctrine precludes a tort cause of action, like fraud, if: (1) "the claim is for breach of duty created *solely* by contract rather than a

---

[4]Plaintiff's state-law fraud claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). Rule 9(b) requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan*, 600 F.3d at 551 (citing *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). Essentially, the plaintiff must set out "the who, what, when, where, and how" of the fraud. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 179 (5th Cir. 1997)). Although Defendant does not argue that Plaintiff failed to plead any of the elements of fraud, as will be addressed *infra*, Plaintiff's claim falls short in this regard and must be repled.

duty imposed by law"; and (2) "the injury is only the economic loss to the subject of the contract." *Cardinal Health Sols., Inc. v. Valley Baptist Medical Ctr.*, No. 1:07-cv-111, 2009 WL 150942, at *19 (S.D. Tex. Jan. 21, 2009) (quoting *Eastman Chem. Co. v. Niro, Inc.*, 80 F. Supp. 2d 712, 717 (S.D. Tex. 2000)). Defendant reasons that Plaintiff's claim for fraud is actually just a claim that Defendant breached its contractual obligation to pay under the Policy. Doc. 13, Def.'s Br. 11. Because the amount in question arises under the Policy, Defendant argues it is not an injury independent from a contract claim and only contractual damages are available. *Id.* at 11–12.

Plaintiff counters that the independent injury doctrine is not applicable to this case. Doc. 17, Pl.'s Resp. 16. Plaintiff clarifies that it does not rely on the Policy for its fraud claim; rather the Belfor Promise "stands on its own two feet." *Id.* at 16–17. Plaintiff reasons that Defendant was never obligated to pay the baseline $400,000. *Id.* at 17. Therefore, Plaintiff reasons, there is no reason to classify the amount in excess of the $400,000 as falling within the contractual obligations of the Policy. *Id.* Plaintiff argues that it would never have incurred this amount absent Defendant's promise to pay the excess, so its damages alleged from fraud are separate from any contractual damages under the Policy. *Id.* Furthermore, Plaintiff argues that Defendant had an independent duty not to commit fraud. Doc. 17, Pl.'s Resp. 19 (citing *Eastman Chem. Co.*, 80 F. Supp. 2d at 717).

But Defendant points out that Plaintiff never plead in its Amended Complaint that any promises were made outside of those contained in the Policy. Doc. 21, Def.'s Reply 6. Therefore, Defendant rejects Plaintiff's characterization of its fraud claim as standing apart from the Policy and based on a separate promise. *Id.* In other words, Defendant appears to maintain that because Plaintiff's Complaint does not expressly state that Plaintiff seeks recovery under both the Policy and

an additional promise, the independent injury doctrine must bar Plaintiff's fraud claim.

Upon review by of the Complaint by the Court, Plaintiff alleges that: (1) the adjuster urged Plaintiff to use Belfor; (2) the adjuster induced Plaintiff to agree by promising to pay the difference in price between Plaintiff's $400,000 quote and the final cost; and (3) Plaintiff would not have hired Belfor if not for Defendant's promise to pay. Doc. 6, Pl.'s Am. Compl. ¶ 47. From these allegations, it is arguable that Plaintiff intended for its fraud claim to be based on a separate promise from the Policy. While Plaintiff's Complaint could benefit from further clarification, it does not conclusively preclude recovery by failing to expressly state that it seeks damages beyond the Policy.

Assuming *arguendo* that Plaintiff has sufficiently alleged claims under both the Policy and under a separate promise, the Court is unpersuaded that the independent injury doctrine bars Plaintiff's recovery under a fraud claim. "In deciding whether the economic loss rule applies [courts] examine the source of the defendant's duty and the nature of the claimed injury." *William Marsh Rice Univ. v. Arrowhead Research Corp.*, No. cv-14-03496, 2016 WL 3223313, at *10 (S.D. Tex Mar. 8, 2016) (quoting *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.)). The Texas Supreme Court has established the following framework for distinguishing between an action that sounds in tort and one that sounds in contract:

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.

*Formosa Plastics*, 960 S.W.2d at 45 (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). Therefore, in determining whether a claim can be brought as a tort, the Court must consider: (1) "the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty)"; and (2) "the nature of the remedy sought by the plaintiff." *Regus Mgmt. Grp., LLC v. IBM*, No. 3:07-cv-1799-B, 2008 WL 1836360, at *6 (N.D. Tex. Apr. 24, 2009) (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)).

Plaintiff alleges that Defendant had an independent legal duty not to commit the intentional tort of fraud. A duty not to commit fraud is not created by contract, but is instead "a duty imposed by the common law of Texas." *Eastman Chem. Co.*, 80 F. Supp. 2d at 717 (quoting *Formosa*, 960 S.W.2d at 45–47). Therefore, the remaining issue is whether the losses Plaintiff allegedly suffered are of a different kind than those contemplated by the subject matter of the Policy. *See id.*

The Court has recently considered a similar issue in *McKinney/Pearl*, where the Court found that damages incurred specifically in reliance on a defendant's alleged misrepresentations went beyond those that were the subject matter of their contract. *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B, 2015 WL 12723054, at *5 (N.D. Tex. Mar. 12, 2015). Here, Plaintiff similarly alleges that its damages were incurred specifically in reliance on Defendant's alleged misrepresentation about covering the cost beyond $400,000. It does not appear from the Amended Complaint that Defendant was obligated to pay the initial $400,000 under the Policy, so the excess amount Defendant allegedly promised to pay would not likely concern the subject matter of the Policy.

That said, the Court need not resolve whether the "independent injury doctrine" operates

to bar Plaintiff's fraud claim at this stage because Plaintiff fails to plead its fraud claim with sufficient particularity. Specifically, Plaintiff omits references to where the allegedly fraudulent statements took place, as required by Federal Rule of Civil Procedure 9(b). Thus, the pleadings do not present "allegations of the particulars of [the] . . . place" the misrepresentation occurred. *Benchmark Elecs.,* 343 F.3d at 724 (finding that the plaintiff met its location burden as it showed that the misrepresentation occurred "in Angleton, Texas" and "in the data rooms at the offices of Huber's investment bankers"). This Court therefore **GRANTS** Defendant's Motion to Dismiss as it pertains to Plaintiff's claim of fraud.

B.     *Fraudulent Inducement Claim*

Like the elements of fraud, to establish a claim for fraudulent inducement, a plaintiff must demonstrate that: (1) the defendant made a misrepresentation; (2) the defendant knew the representation was false and intended to induce the plaintiff to enter into a contract; (3) the plaintiff relied on it in entering into the contract; and (4) the plaintiff's reliance led to an injury by entering into the contract. *Bohnsack*, 668 F.3d at 277. And as with fraud, a plaintiff alleging a state-law fraudulent inducement claim is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) (citing *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008)).

Fraudulent inducement is "a species of fraud that requires the plaintiff and defendant to have entered into an enforceable contract." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 273 (5th Cir. 2012). To establish fraudulent inducement, the "elements of fraud must be established as they relate to an

agreement between the parties." *Id.* at 277 (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)). Therefore, "asserting a fraudulent inducement claim against a third party to the contract is inconsistent with Texas case law." *William Marsh Rice Univ. v. Arrowhead Research Corp.*, No. 14-03496, 2015 WL 10987080, at *8 (S.D. Tex. July 23, 2015).

Plaintiff relies on the same allegations for fraudulent inducement as it did for fraud. Doc. 6, Am. Compl. ¶¶ 47–49. That is, Plaintiff alleges that: (1) Defendant urged Plaintiff to use Belfor instead of the contractor Plaintiff had chosen; (2) Defendant induced Plaintiff to agree by promising to pay the difference in price between Plaintiff's $400,000 quote and the final cost; (3) Defendant knew this representation was false, or made it recklessly and without knowledge of its truth; (4) Defendant intended for Plaintiff to rely on the statement; (5) Plaintiff would not have hired Belfor if not for Defendant's promise to pay; and (6) Plaintiff suffered damages due to Defendant's representation. *Id.* ¶¶ 47–49.

Defendant argues in its Motion to Dismiss that Plaintiff is barred from asserting a fraudulent inducement claim because Defendant is not a party to the contract between Belfor and Plaintiff, and Texas law requires that the claim relate to an agreement between the parties. Doc. 13, Def.'s Br. 6. The only agreement between the parties, according to Defendant, is the Policy, and Plaintiff does not allege that Defendant induced Plaintiff into that agreement. *Id.* Therefore, Defendant argues, a fraudulent inducement claim cannot be brought against it. *Id.*

Plaintiff responds by citing to its Amended Complaint where it alleged that Defendant was either a third-party beneficiary or implied party to the contract. Doc. 17, Pl.'s Resp. 21. Plaintiff reasons that Defendant is a third-party beneficiary, and because a third-party beneficiary assumes the

same rights and duties as the named parties, Defendant is an implied party to the contract. *Id.* Plaintiff appears to reason that as a third-party beneficiary Defendant is a party to the contract between Plaintiff and Belfor, so a fraudulent inducement claim is not barred as a matter of law. *See id.* (citing *Board of Cty Comm'rs of Le Flore Cty v. Dist. Court of Okl. Cty*, 435 P.2d 157, 164 (Okla. 1967).

In its Reply, Defendant first argues that Plaintiff fails to cite to any authority supporting its argument that a plaintiff can bring a fraudulent inducement claim against a third-party beneficiary. Doc. 21, Def.'s Reply 2. Defendant then rejects the cases Plaintiff did rely on because they are factually dissimilar. *Id.* In those cases, says Defendant, the third-party beneficiary was suing and seeking to enforce contractual rights. *Id.* But here, the Defendant is not suing and the claim is in tort rather than in contract. *See id.* Next, Defendant argues that a third-party beneficiary does not have standing to bring a claim of fraudulent inducement because status as a third-party beneficiary is not conferred until the contract is formed. Doc. 21, Def.'s Reply 2 (citing *Erwin v. Texas Health Choice, L.C.*, 187 F. Supp. 2d 661, 668 (N.D. Tex. Feb 22, 2002)). Because Defendant could not sue as a third-party beneficiary for any actions committed before the contract's formation, Defendant reasons that it likewise cannot be sued for such actions. *Id.* 2–3. Lastly, Defendant argues that even if it could be sued for fraudulent inducement as a third-party beneficiary, Plaintiff failed to make any factual allegations to support its claim that Defendant is a third-party beneficiary. *Id.* at 3.

The Court agrees with Defendant that it is unclear whether a third-party beneficiary can be sued for fraudulent inducement. And Plaintiff did not cite to any case authority supporting this contention. Nonetheless, the Court need not make a decision on this point because, as a threshold

matter, Plaintiff failed to adequately allege facts that would allow the Court to plausibly infer that Defendant was a third-party beneficiary to the contract.

First, the Court rejects Plaintiff's contention that simply stating that Defendant is a third-party beneficiary is enough to survive a 12(b)(6) motion. Plaintiff's statement that Defendant is a third-party beneficiary is a legal conclusion, not a factual assertion, and the Court is not bound to accept legal conclusions in a complaint as true. *See Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Choi v. Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 881 (N.D. Ill. 1999) (finding the allegation that a plaintiff was a third-party beneficiary of a contract is a legal conclusion that the court need not accept for the purpose of a motion to dismiss). Therefore, the Court cannot assume that Defendant was a third-party beneficiary of the contract, and instead the Court will consider whether Plaintiff has alleged facts that, if true, would allow the Court to infer Defendant's third-party beneficiary status.

Under Texas law, a contract creates a third-party beneficiary only if the signatories (1) "intended to confer a benefit on that third party"; and (2) "entered the contract to confer that benefit on the third party." *In re Moose Oil & Gas Co.*, 613 F.3d 521, 527 (5th Cir. 2010) (citing *MCI Telecomm. Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). A "court will not create a third-party beneficiary contract by implication." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1075 (5th Cir. 2002) (quoting *MCI Telecomm.*, 995 S.W.2d at 651). Simply because "a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary." *Id.* In other words, "the intent

to make someone a third-party beneficiary must be clearly written or evidenced in the contract." *Id.*
at 1076.

Here, Plaintiff does not plead any facts that show it and Belfor intended to confer a benefit
on Defendant, or that it and Belfor entered into their contract for the purpose of conferring that
benefit on Defendant. Furthermore, if there were any intent to make Defendant the beneficiary,
Plaintiff failed to allege that this intent is clearly written or evidenced in the contract. Therefore, the
Court cannot infer from the facts alleged that Defendant is a third-party beneficiary. *See Iqbal*, 556
U.S. at 678.

Because the Court cannot infer that Defendant is a party to the contract, Plaintiff fails to
state a claim for fraudulent inducement because the elements of fraud must be established as they
relate to an agreement between the parties. *See Haase*, 62 S.W.3d at 798–99. As Defendant is not
a party to the contract between Plaintiff and Belfor, Plaintiff has not adequately pled a fraudulent
inducement claim.

But even if Defendant were a party to the contract, Plaintiff would still fail to meet the
heightened pleading standard of Rule 9(b) by not pleading the location of the fraudulent inducement
with particularity. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss as it pertains
to Plaintiff's fraudulent inducement claim.

C.     *Promissory Estoppel Claim*

Texas courts apply the Restatement (Second) of Contracts's definition of promissory estoppel:
"A promise which the promisor should reasonably expect to induce action or forbearance of a
definite and substantial character on the part of the promisee or a third party and which does induce

such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999) (citations omitted) (quoting Restatement (Second) of Contracts, § 90)). To demonstrate a plausible claim for promissory estoppel under Texas law, Plaintiff must show: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).

Plaintiff employs the same arguments for this claim as it did for its fraud and fraudulent inducement claims. Doc. 6, Pl.'s Am. Compl. ¶¶ 47–49. Plaintiff thus argues: (1) that Defendant made a promise to pay the difference in cost between $400,000 and the cost of Belfor's services; (2) that Defendant could foresee Plaintiff's reliance; and (3) that Plaintiff relied to its detriment. *Id.*

For its part, Defendant argues that Plaintiff's claims are ultimately claims that Defendant breached a duty to pay under the Policy. Doc. 13, Def.'s Br. 10. Under Texas law, "the doctrine of promissory estoppel may be invoked only where no contract on the subject matter exists." *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, 221 F. Supp. 3d 853, 863 (S.D. Tex. 2016). Therefore, Defendant reasons, promissory estoppel is inapplicable because the relief Plaintiff seeks is covered by a written contract.

Plaintiff does not contest that the damages related to the Belfor Promise might be covered by the Policy. *See* Doc. 17, Pl.'s Resp. 13–14. Rather, Plaintiff asserts that its promissory estoppel claim is pled alternatively in the event discovery reveals that the Belfor Promise is not covered by the Policy. *Id.* Plaintiff relies on Federal Rule of Civil Procedure 8, which states that a party "may state

as many separate claims or defenses as [the party] has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). If the Belfor Promise is not covered by the Policy, then Plaintiff's promissory estoppel claim is premised "on the idea that the Belfor-Related Promise involved a false representation that is in addition to the promises that underlie the Policy." Doc. 17, Pl.'s Resp. 13. In reply, Defendant focuses only on Plaintiff's failure to clarify that its promissory estoppel claim was an alternative claim. Doc. 21, Def.'s Reply 6.

As there is a possibility the Belfor Promise is not covered by the Policy, Plaintiff's promissory estoppel claim can survive as an alternative to Plaintiff's breach of contract claims. *See* Fed. R. Civ. P. 8(d)(3); *see also Baisden v. I'm Ready Prods., Inc.*, No. H-08-0451, 2008 WL 2118170, at *10 (S.D. Tex. May 16, 2008). Turning to Plaintiff's factual allegations, the Court concludes that Plaintiff has sufficiently pled facts that, taken as true, allow the Court to infer a promissory estoppel claim. Specifically, Plaintiff alleges that: (1) Defendant knowingly misrepresented the relief available to Plaintiff as it pertained to the Belfor Promise; (2) it would not have entered the Belfor Agreement save for Defendant's misrepresentation; and (3) such reliance incurred significant costs on Plaintiff. Doc. 6, Pl.'s Am. Compl. ¶ 47. This is enough to infer that Defendant made a misrepresentation that was relied on to Plaintiff's detriment, and that injustice is avoided only by enforcing the promise.

Plaintiff also asserts an additional theory for the survival of its promissory estoppel claim: Even if the Belfor Promise is covered by the Policy, Plaintiff argues that the Policy is at risk of being invalidated. *Id.* at 20–21. According to Plaintiff, where the contract upon which a claim is based may be invalidated at a future date, a plaintiff is permitted to plead a promissory estoppel claim in conjunction with any contract claims. *Id.; Waller v. DB3 Holdings, Inc.*, No. 3:07-cv-0491-D, 2008

WL 373155, at *6 (N.D. Tex. Feb. 12, 2008); *see also Kiewit Offshore Servs., Ltd. v. Dresser-Rand Global Servs., Inc.*, No. H-15-1299, 2016 WL 4564472, at *20 (S.D. Tex. Sept. 1, 2016) (granting summary judgment for the defendant, stating that the plaintiff could not maintain its quasi contractual claims because the proceedings were beyond the pleadings stages and the existence of a valid contract had been conclusively established). Therefore, even if the Belfor Promise is covered by the Policy, Plaintiff argues that the promissory estoppel claim should survive Defendant's Motion because the Policy might be invalidated. Doc. 17, Pl.'s Resp. 21.

To support its contention that the Policy may be invalidated at a later date, Plaintiff cites to Defendant's Amended Answer where Plaintiff believes Defendant has reserved its right to invalidate the Policy. Doc. 17, Pl.'s Resp. 20 (quoting Doc. 14, Def.'s Am. Answer 7). Specifically, Plaintiff quotes Defendant as stating that it has "reserved the right to assert at a later date that Total RX's Policy claims are barred due to dishonesty and/or concealment or misrepresentation." *Id.*

Plaintiff's interpretation that this means Defendant may try to invalidate the contract altogether is misguided, and overlooks some vital language in its quote. Defendant's Amended Answer reads that Defendant "reserves the right to assert at a later date that Total RX's claims are barred, in whole or in part, due to fraud under Texas law and *under the terms of the polic*y." Doc. 14, Def.'s Am. Answer ¶ 59 (emphasis added). It does not follow that Defendant would try to invalidate the Policy by relying on the terms of the Policy. Defendant has not reserved the right to invalidate the Policy, but instead, it has reserved the right to bar Plaintiff's claims based on the Policy's provisions. *Id.*

There is no indication, then, that the Policy may be invalidated at a future date. So Plaintiff's

theory based on the possibility of the Policy's invalidation appears untenable. The Court need not base its decision on this argument, though, because as discussed above, Plaintiff's claim survives as an alternative to its breach of contract claims. Even though Defendant argues that Plaintiff did not clarify that its promissory estoppel claim was pled alternatively, the Court construes Plaintiff's Amended Complaint as doing so. Furthermore, as the Court is giving Plaintiff the opportunity to replead, Plaintiff can clarify its intent upon amending its Complaint. The Court therefore **DENIES** Defendant's Motion to Dismiss as it pertains to Plaintiff's promissory estoppel claim.

D.      *Pattern or Practice Claim*

Plaintiff also brings a "pattern or practice claim." Doc. 6, Pl.'s Am. Compl. ¶ 50. In doing so, however, Plaintiff does not cite to a specific case or statute providing for "pattern or practice" as a separate cause of action. Instead, Plaintiff simply states that certain acts taken by Defendant occur with such frequency that they constitute a general business practice and pattern. *Id.* In support, Plaintiff cites to two statutes that prohibit discriminatory and unfair conduct as evidence that Texas has taken a "stand against an insurance group's concerted effort to underpay insurance proceeds." Doc. 17, Pl.'s Resp. 11.

In Response, Defendant argues that, even if a claim of pattern or practice exists, Plaintiff's claim should be dismissed because it is devoid of factual support. Doc. 13, Def.'s Br. 6–7. But the Court cannot consider the factual sufficiency of a claim without knowing what is required to succeed on that claim. And the Court is unaware of any case law that supports a stand-alone claim for pattern or practice in this situation.[5] As the Court has no indication that a claim of pattern or

---

[5] The Court did find statutory recovery based on pattern or practice included in the Real Estate Settlement & Procedures Act but that recovery is specific to the Act. 12 U.S.C. § 2605(f)(1)(B). The Court

practice presents any cause of action in this situation, the Court **GRANTS** Defendant's Motion to Dismiss on that claim. If Plaintiff chooses to maintain its pattern and practice cause of action in its amended complaint, Plaintiff must clarify on what case or statute it relies for bringing it as a stand-alone claim.

E.      *Texas Deceptive Trade Practices Act Claim*

Defendant also moves to dismiss Plaintiff's claim of unlawful deceptive trade practice under the Texas Deceptive Trade Practices Act (DTPA). Doc. 13, Def.'s Br. 7. In its Amended Complaint, Plaintiff claims that Defendant violated the DTPA, as incorporated by Texas Insurance Code § 541.151, when it induced Plaintiff to rebuild the pharmacy using Belfor as the contractor. Doc. 6, Pl.'s Am. Compl. ¶ 41. It is unclear whether Plaintiff pleads a stand-alone DTPA claim in addition to its DTPA claim incorporated by the Insurance Code. It appears to the Court, however, that Defendant seeks to dismiss only the stand-alone DTPA claim, to the extent Plaintiff pleads one.[6] The Court therefore analyzes Defendant's Motion as challenging only Plaintiff's stand-alone DTPA claim, to the extent that Plaintiff makes one.

1.      DTPA $500,000 Consideration Limit

The DTPA allows consumers to recover when they are the victim of "[f]alse, misleading, or

---

also found references to pattern or practice contained in discrimination cases, but even there, "a pattern and practice claim is not a 'separate and freestanding cause of action.' Rather, it is a method of proof applied by the court—almost exclusively in class actions—to analyze disparate treatment claims." *Jackson v. Texas Parks and Wildlife Dept.*, 2015 WL 12862879, at *5 (W.D. Tex. Oct. 2, 2015) (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001)).

[6]The Court notes several factors in coming to this conclusion. In its Motion to Dismiss, Defendant ignores all other Insurance Code claims made by Plaintiff and focuses on the DTPA alone. Doc. 13, Def.'s Br. 7–10. Further, in its Reply, Defendant focuses on arguing that Plaintiff does, in fact, make a stand-alone claim under the DTPA. Doc. 21, Def.'s Reply 5.

deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). To plead a claim for a DTPA violation under § 17.46, Plaintiff must show that there was a false, misleading, or deceptive act or practice that was: (1) specifically enumerated in subsection (b) of § 17.46; and (2) that it was relied on by a consumer to the consumer's detriment. Tex. Bus. & Com. Code § 17.50(a). Plaintiff claims that Defendant specifically violated the practice enumerated in § 17.46(b)(12): "[R]epresenting that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Doc. 6, Pl.'s Am. Compl. ¶ 41. Plaintiff alleges that the agreement to allow Belfor to rebuild the pharmacy conferred an obligation on Defendant to pay the amount by which the cost exceeded $400,000. *Id.* As a result, Plaintiff claims: (1) Defendant violated a specifically enumerated practice by not meeting its obligation; and (2) that Plaintiff relied on the promise to its detriment. *Id.* ¶ 42.

Defendant moves to dismiss, in part, because it claims that the DTPA does not apply where the consideration of the transaction in question exceeds $500,000. Doc. 13, Def.'s Br. 7–8. The DTPA provides that:

> Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence.

Tex. Bus. & Com. Code § 17.49(g). As Plaintiff alleges it is owed the amount exceeding $400,000 by $905,233, Defendant claims that the consideration limit of $500,000 is easily exceeded and the claim should therefore be dismissed. Doc. 13, Def.'s Br. 7–8.

Plaintiff responds by identifying the interplay between the DTPA and the Texas Insurance Code to show that the consideration limit does not apply to this case. Doc. 17, Pl.'s Resp. 15. Plaintiff

cites to *Crown Life Insurance* where the court determined that when a party brings a DTPA claim under the Insurance Code, the only claims and exceptions available are those specifically incorporated by the Insurance Code. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 386 (Tex. 2000) (holding that the DTPA's general requirement that a plaintiff be a "consumer" did not apply to a specific DTPA claim brought under the Insurance Code because the general requirement was not incorporated by the Insurance Code). Plaintiff's reliance on *Crown Life Insurance* is applicable only to Plaintiff's DTPA claim as incorporated by the Insurance Code, not any stand-alone DTPA claim. And to the extent Plaintiff makes a stand-alone DTPA claim, Defendant's Motion seeks to dismiss only that claim. Therefore, the Court need not consider how the $500,000 would affect Plaintiff's claim for a violation of § 17.46 claim as it is incorporated by the Insurance Code, but rather how it affects any claim for a violation of § 17.46 brought solely under the DTPA.

As discussed above, it is somewhat unclear whether Plaintiff brought a stand-alone violation of the DTPA as based on § 17.46. According to Defendant, because Plaintiff alleged that it could recover damages under the DTPA, and because the section authorizing such damages is not incorporated into the Insurance Code, Plaintiff appears to allege a stand-alone DTPA claim. Doc. 21, Def.'s Reply 5. Thus, Defendant asserts that the stand-alone claim should be dismissed because it exceeds the $500,000 consideration limit. *Id.*

The Court agrees. To the extent that Plaintiff asserts its claim based on a violation of § 17.46 as a stand-alone DTPA claim, the claim is barred by the $500,000 consideration limit. The Court notes, however, that it makes no conclusion with regard to Plaintiff's claim based on a violation of § 17.46 as it is incorporated by the Insurance Code.

2.    Covered By the Policy

Defendant also argues that the DTPA claim should be dismissed because it is covered by the Policy, and a breach of contract is not actionable under the DTPA. Doc. 13, Def.'s Br. 9. Defendant asserts that because Plaintiff identifies the lawsuit as a "first-party insurance coverage case," any claim that Defendant reneged on a promise is a claim that Defendant breached a contractual obligation. *Id.*; Doc. 6, Pl.'s Am. Compl. ¶¶ 20, 33. Consequently, Defendant claims, Plaintiff has failed to plead a cognizable DTPA claim and the claim should be dismissed. Doc. 13, Def.'s Br. 10.

Plaintiff refutes Defendant's assertion. Doc. 17, Pl.'s Resp. 15. According to Plaintiff, its DTPA claim is based on a misrepresentation of coverage, and DTPA recovery may be based on a misrepresentation of coverage, as opposed to a denial of coverage. Doc. 17, Pl.'s Resp. 16 (citing *Webb v. Int'l Trucking Co., Inc.*, 909 S.W.2d 220, 230 (Tex. App.—San Antonio 1995, no writ)).

In *Webb*, the defendant insurance company agreed to pay for the plaintiff's truck repair so long as the repairs were made in the vicinity of the accident, but after the repairs were made, the defendant refused to pay for them. 909 S.W.2d at 230. The defendant in *Webb* argued that the case was about mere denial of coverage and that a plaintiff could not recover for that under the DTPA. *Id.* The court in *Webb* disagreed and held that DTPA recovery may be predicated on misrepresentation of insurance coverage. *Id.*

*Webb* appears to support Plaintiff's argument that DTPA recovery is available based on misrepresentation. But Plaintiff's argument does not save its stand-alone DTPA claim from dismissal because the $500,000 consideration limit still operates as discussed above. The Court need not consider the impact of *Webb* on Plaintiff's DTPA claims as incorporated by the Insurance Code

because those claims are outside the scope of Defendant's Motion to Dismiss.

Thus, because Plaintiff's stand-alone DTPA claim is subject to the $500,000 consideration limit, Plaintiff failed to plead a cognizable DTPA claim. The Court therefore **GRANTS** Defendant's Motion to Dismiss as it pertains to Plaintiff's stand-alone DTPA claim.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion. Specifically, the Court **DENIES** Defendant's Motion as it pertains to Plaintiff's promissory estoppel claim. And the Court **GRANTS** Defendant's Motion as it pertains to Plaintiff's fraud, fraudulent inducement, pattern or practice, and stand-alone DTPA claims. Accordingly, the Court **DISMISSES without prejudice** Plaintiff's fraud, fraudulent inducement, and pattern or practice claims. And the Court **DISMISSES with prejudice**[7] Plaintiff's stand-alone DTPA claim.

The Court finds it appropriate to give Plaintiff an opportunity to replead its claims.[8] An amended complaint is due on or before **Monday, August 14, 2017**. Failure to file an amended pleading by this deadline will result in a dismissal of Plaintiff's claims.

---

[7]The Court dismisses this claim with prejudice because the Court does not believe, as a matter of law, that Plaintiff can recover under a stand-alone DTPA claim. Thus, repleading cannot cure the deficiency, and any attempt to do so would be futile. *See Kelley v. KIMC Inv., Inc.*, No. 3:10-cv-2384-L, 2012 WL 639283, at *7 (N.D. Tex. Feb. 28, 2012).

[8]Normally, courts will afford a plaintiff the opportunity to overcome pleading deficiencies, unless it appears that the defects are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") Here, Plaintiff failed to plead some of its claims with sufficient factual specificity. Given that this is the Court's first review of its pleadings, it is proper to grant Plaintiff leave to amend its Complaint, if he can do so in a way that overcomes the deficiencies identified in this Order.

SO ORDERED.

SIGNED: July 17, 2017.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE