UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOTAL RX CARE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-2965 |
| | § | |
| GREAT NORTHERN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## SECOND AMENDED COMPLAINT

Plaintiff Total Rx Care, LLC ("Total Rx," the "Insured" or "Plaintiff") files this Second

Amended Complaint against Great Northern Insurance Company (the "Insurance Defendant" or

"Great Northern").

### I.  PARTIES

1.      Total Rx is a Texas limited liability company with its principal place of business

in Texas.

2.      Great Northern is an Indiana corporation that conducts the business of insurance

in the State of Texas.

### II.  JURISDICTION AND VENUE

3.      This matter was removed to this Court by the Insurance Defendant pursuant to 28

U.S.C. §1332 on the basis of diversity of citizenship between the Plaintiff and Insurance

Defendant and an amount in controversy exceeding $75,000.

4.      Venue is appropriate in the Northern District of Texas because all or part of the

Insurance Defendant's violations of statutory and common law were committed in the Northern

District of Texas, the property which is the subject of this lawsuit and Plaintiff's insurance claim

is located in the Northern District of Texas, and Great Northern mishandled the adjustment of Total Rx's claim in the Northern District of Texas.

### III. BACKGROUND

5.    Total Rx is the Named Insured under Policy number 3603-34-80 DAL (the "Policy") issued by Great Northern for the Policy period September 4, 2015 to September 4, 2016.  Prior to December 26, 2015, Total Rx owned and operated a pharmacy business located at 9101 Lakeview Parkway, Suite 500 in Rowlett, Rockwall County, Texas (the "Pharmacy").  The Policy covered, *inter alia*, certain property and business income losses sustained by the Pharmacy due to windstorm events.

6.    During the Policy period, on or about December 26, 2015, the Pharmacy and its contents were struck by a tornado, and suffered resulting wind and water damage.  The Pharmacy instantly became non-operational.  Notice of the devastation was promptly given to the Insurance Defendant pursuant to the terms of the Policy.

7.    The Insurance Defendant acknowledges that "[w]indstorm is a covered peril." *See* Great Northern First Report - Eleventh Report.  Under the Policy, Great Northern promised to provide $25 million of Business Income and Extra Expense coverage (with a *de minimus* 24-hour waiting period deductible).  Despite receiving the full premium from Total Rx, Great Northern has broken its promise to fully reimburse Total Rx for its Business Income and Extra Expense losses up to Policy limits.

8.    Great Northern's adjuster, Byron Smith, inspected the shuttered Pharmacy on or about January 4, 2016.  On or about January 6, 2016, he requested specific information from Total Rx:

  a.   Total Rx's lease for the Pharmacy building,

b.  Total Rx's financial information,

c.  contact information for Total Rx's contractor, emergency mitigation company, and the drug destruction company,

d.  the Pharmacists Mutual insurance policy issued to Total Rx Care, Inc.,

e.  information regarding whether an alternate facility could not be created,

f.  vendor invoices, and

g.  invoices for destroyed drugs.

Such information was promptly provided.

9.      Great Northern also retained forensic accounting firm HSNO to *estimate* the likely amount of Business Income lost by the Pharmacy through June 2016 as a result of the tornado.[1]  According to its website, HSNO was founded 46 years ago and is an internationally recognized accounting firm specializing in insurance claims.  In fact, HSNO touts its unique ability to ferret out and thoroughly assess the facts that are important to the analysis of insurance claims; and to do so quickly.

10.      HSNO thoroughly reviewed the Pharmacy's books and records, fully analyzed same, and repeatedly conferred with the Pharmacy's outside accounting firm and retained business consultant.  The Pharmacy's accountants and business consultant answered HSNO's questions, and provided all requested information to HSNO, including the Pharmacy's 2014 and 2015 financials and the 2016 budget projections prepared prior to the tornado in the fall of 2015.

11.      The extensive information provided to HSNO enabled it to issue a report to Great Northern on January 11, 2016, estimating the Pharmacy's Business Income loss through June 2015.  According to HSNO's report, the Pharmacy began operations in 2014, "with sales, in general, increasing on a monthly basis from the initial operations through the date of loss."

---

[1] Given that Business Income coverage by its very nature is a hypothetical construct, it can only be estimated.

HSNO Report dated January 11, 2016 at 1.  "Sales increased from $360,000 in January 2015 to $9.7MM in November 2015.  Sales for the three month period of September through November 2015 averaged approximately $10MM per month."[2]   *Id.*   HSNO found, and so advised Great Northern, that the Pharmacy's "budgeted sales projections for December 2015 through April 2016 are reasonable."  HSNO Report dated March 11, 2016, at 5.  In fact, HSNO informed Great Northern that the Pharmacy's Business Income loss exceeded $35 million through June 2016 (or $5.8 million per month).  HSNO Report dated January 11, 2016 at 3.  Ironically, in the eighteen months since HSNO first informed Great Northern that Total Rx was suffering a Business Income loss of $5.8 million per month, nothing has changed.

12.     Shortly after HSNO issued its January 11, 2016 report to Great Northern, HSNO and Great Northern requested additional specific information, including:

    a.  the Medoc contract and information regarding the "Sales Management Fees" account,

    b.  monthly summary of new prescriptions filled, existing prescriptions filled, and revenue per prescription filled,

    c.  December 2015 revenue figures,

    d.  payroll expenses, and

    e.  monthly revenue and costs of goods sold.

13.     Wendy Sanhai (working for Great Northern) requested:

    a.  list of tasks and associated timelines for the Pharmacy construction, and

    b.  "various recertifications and state inspections, etc., you anticipate with this process."

Such information was promptly provided to Great Northern (either directly or through HSNO).

---

[2] The Pharmacy's robust financial results in 2015 were due in substantial part to a marketing and administrative contract entered into with Medoc Health Services, L.L.C. on January 5, 2015.

14.     On January 17, 2016, Great Northern's consultant Vericlaim requested and obtained still more specific information from Total Rx:

      a.     interior build-out plan,

      b.     contact information of contractor who performed the prior interior build-out,

      c.     Total Rx's plans for the restored Pharmacy facility, and

      d.     other questions about finish-out plans.

15.     Soon thereafter, HSNO and/or Great Northern requested and were provided with:

      a.   The contact information of the Pharmacy's architect;

      b.   Bank reconciliation data;

      c.   2015 reconciliations of revenue;

      d.   Accountants' workpapers;

      e.   Additional information regarding the Pharmacy's revenue and accounts receivable;

      f.   Additional profit and loss information;

      g.   Prescription-filled data;

      h.   Copies of construction plans, permits, and costs from Belfor;

      i.   Additional information regarding expenses;

      j.   The number of reversed/cancelled prescriptions;

      k.   Total Rx bank statements.

(The foregoing list is illustrative, it is not comprehensive.)

16.     In the weeks following the tornado, Total Rx, its business consultant, and agents continually cooperated with Great Northern, answering all questions asked and providing all documents and information requested, including net income figures and information regarding

Total Rx's necessary expenses existing before the tornado.[3]  In Great Northern's own words, Total Rx was "very responsive to [Great Northern's] information requests…."  Email from Byron Smith to Michael Nguyen dated February 24, 2016.

17.     On February 24, 2016, Great Northern advised Total Rx that upon receipt of Total Rx's December financials and December prescription data, Great Northern's "accountants [would have] everything they need to complete the Business Income loss calculation…."  Total Rx provided that information to HSNO on or about March 3, 2016.  With this information in hand, on March 11, 2016, HSNO issued a second report to Great Northern, refining its calculation of Total Rx's business interruption loss.  HSNO's findings reaffirmed its January 11, 2016 findings that the Pharmacy's Business Income losses were approximately $5.8 million per month.

18.     Given that HSNO's Business Income loss calculation was unaffected by the information it received from Total Rx after its January 11, 2016 report, Great Northern was in possession of all of the information it needed to properly adjust Total Rx's claim by January 2016. Regardless, there is no question that Great Northern should have paid Policy limits by at the latest March 2016.  Instead, Great Northern made partial Business Income payments of $3 million in February 2016 and $2,775,126 in April 2016 without a fulsome explanation as to why it was not paying Total Rx more of the proceeds it was owed under the Policy.

19.     In fact, Great Northern knew full well that it owed its Insured significantly more money.  For example, on March 11, 2016 (the same day HSNO issued its second report), Great

---

[3] Pursuant to the Policy, Great Northern was to determine Total Rx's Business Income losses considering three factors: (i) Total Rx's net income before the direct physical loss or damage occurred; (ii) Total Rx's likely net income if no loss or damage occurred; and (iii) Total Rx's continuing operating expenses, including its normal payroll expenses, necessary to resume operations with the same quality of service that existed just before the direct physical loss or damage.  Simply stated, Business Income loss was to be determined based on the likely net income of the insured business if no covered loss or damage had occurred, plus all charges and expenses that are likely to continue during the Period of Restoration, as that term is used in the Policy.

Northern's adjuster, Byron Smith, reported that he was "seek[ing] authority to proceed with paying [Total Rx's] known losses" of $13,175,541.55, which was calculated by deducting $3,625,000 already paid from Great Northern's calculation of Total Rx's gross claim of $16,800,451.55. But instead of paying this "known loss," Great Northern—without explanation to Total Rx—paid Total Rx $2,775,125.55, falsely stating that Total Rx's recognized gross claim was only $6,400,125.55.

20.    Despite the fact that Total Rx continued to provide Great Northern with the ongoing financial data it requested (although such data has no bearing on the calculation of Business Income loss under the express terms of the Policy), Great Northern has failed to pay Total Rx any additional sums owed under the Policy. In sum, at all times relevant, Great Northern should have paid Total Rx Policy limits for the lost Business Income and Extra Expense it suffered.[4] Such insurance proceeds, however, have been knowingly underpaid and delayed for approximately 1.5 years.

21.    In addition, Great Northern has also failed to fulfill its promise to pay for the amounts in excess of $400,000 that Belfor Property Restoration ("Belfor") charged to repair the Pharmacy. Total Rx consulted with a contractor that was willing to completely rebuild the Pharmacy for approximately $400,000. Although Great Northern had paid its $625,000 property damage policy limits, it urged Total Rx to allow Belfor to repair the devastated Pharmacy instead, promising that Great Northern would pay the amount of the Belfor invoice that exceeded the sum of $400,000. This representation was expressly made by Great Northern's adjuster, Mr.

---

[4] In early 2016, Total Rx proposed a global settlement between it, Great Northern, and Total Rx's insurer Pharmacists Mutual Insurance Company ("Pharmacists Mutual") for amounts related to Total Rx's Business Income loss claim. But Great Northern refused to try and resolve the Claim, leaving Total Rx no choice but to settle with Pharmacists Mutual. Ever since, Great Northern has used Total Rx's settlement with Pharmacists Mutual against Total Rx (although never actually explaining its position to Total Rx) as a basis for attempting to justify Great Northern's own failure to resolve the Claim.

Smith, to Total Rx's business consultant, Mr. Solomon, during an early January 2015 telephone call between the two.  During this telephone call, Mr. Solomon was in his Dallas office.  Mr. Smith was believed to be located in his office outside of San Antonio at the time of the call.

22.    In conjunction with its promise, Great Northern, not Total Rx, accepted Belfor's rates for construction.  It is without dispute that Belfor's invoice ultimately exceeded $400,000 by the sum of $905,233.  But as demonstrated by the insurer's own file, Great Northern never intended to pay $905,233 to Total Rx and reneged on this promise, causing Belfor to place a lien on the real property leased by Total Rx.  Total Rx's landlord advised that Belfor's lien constituted a breach of a lease covenant and demanded that the lien be removed within 30 days. Total Rx promptly forwarded the landlord's notice of breach to Great Northern, requesting that it pay Belfor's invoice as it had promised.  Disregarding the exposure it was subjecting its Insured to, Great Northern refused to pay any part of Belfor's invoice, even the sum of "$452.616.72 for half the expediting expense [Great Northern] authorized when referring Belfor … to the insured to expedite repairs at the facility," which Great Northern's adjuster, Mr. Smith, has admitted Great Northern owes.  *See* Great Northern Eighth Report dated August 1, 2016.

23.    In sum, Great Northern owes Total Rx the sum of $902,233 plus interest as a result of Great Northern's promise to pay same and Total Rx's justifiable reliance thereon.

24.    Per Great Northern's request, in September 2016, Total Rx submitted a proof of loss confirming that the Pharmacy's loss of Business Income and Extra Expense exceeded remaining Policy limits.

25.    Unbeknownst to Total Rx, Great Northern had no intention of paying the Policy proceeds that were due and owing, or transparently relaying to Total Rx the reasons why it would not do so.  Total Rx has come to learn, however, that Great Northern is relying on

irrelevant and factually inaccurate bases—despite possessing information that would reasonably refute same—to try to justify its breaches of the Policy and unlawful acts and omissions.  Rather than look for reasons to pay the Pharmacy's claim, as is Great Northern's duty under Texas law, Great Northern has done the opposite.

## IV.  NATURE OF THE CASE

26.     This is a first-party insurance coverage case stemming from tornado-driven wind and water that made the Pharmacy completely inoperable.  Among other things, Plaintiff seeks a declaration that the Pharmacy, as well as its Business Income and Extra Expense losses, are covered by the Policy issued by the Insurance Defendant.  Plaintiff seeks damages for breach of contract; violations of the Texas Insurance Code; violations of the Texas Deceptive Trade Practices Act ("DTPA") as incorporated by the Texas Insurance Code; fraud; promissory estoppel; and common law bad faith.  Plaintiff seeks to recover statutory damages at the highest multiple of actual damages permitted under Texas law; 18% interest per annum under the Insurance Code; punitive damages under the common law duty of good faith and fair dealing and/or fraud; pre-judgment interest under the Texas Finance Code; attorneys' fees; expenses; costs of court; and/or post-judgment interest at the maximum allowable rate.  Plaintiff notes that the Texas Insurance Code and DTPA, as incorporated by the Texas Insurance Code, are required to be construed liberally in favor of protecting the policyholder and penalizing the insurer for late or under payment.[5]

27.     Plaintiff has performed all conditions precedent to its recovery under the Policy and beyond the Policy, or the Insurance Defendant has waived same.

---

[5] Various causes of action are plead in the alternative, as they are subject to (i) discovery, (ii) legal determinations by the Court, and/or (iii) determinations of fact by the jury.  Such alternative pleas are expressly allowed by FED. R. CIV. P. 8(d)(2) and (3).  Any failure on Defendant's part to respect such alternative or inconsistent pleading would constitute a violation of such Rule.

28.     Plaintiff gave timely and satisfactory notice to the Insurance Defendant.   The Insurance Defendant did not promptly acknowledge receipt of the claim in writing.

29.     Plaintiff promptly provided information to the Insurance Defendant and its agents as they requested, and provided ample opportunities for the Insurance Defendant to inspect the damage to the Pharmacy and the Pharmacy's pertinent records.

30.     The Insurance Defendant has failed and refused to pay Plaintiff in accordance with its promises under the Policy and/or in accordance with its independent, extra-contractual promises, and in accordance with the legal requirements imposed on insurance companies conducting business in this state.

31.     The Insurance Defendant failed to effectuate settlement in a fair manner, even though its liability to Total Rx became reasonably likely in January 2016.   This conduct is a violation of Tex. Ins. Code. ch. 541.

32.     The Insurance Defendant failed to offer Plaintiff adequate reimbursement for its loss without any explanation as to why full payment was not being made.   The Insurance Defendant did not communicate that any future settlements or payments would or would not be forthcoming to pay the entire loss covered under the Policy.   This conduct violates Tex. Ins. Code. ch. 541.

33.     The Insurance Defendant failed to affirm or deny full coverage within a reasonable time.  Plaintiff did not receive indication of acceptance or rejection regarding the full and entire claim in writing from the Insurance Defendant in a timely manner.  This conduct is a violation of Tex. Ins. Code ch. 541.

34.     The Insurance Defendant failed to conduct a reasonable or timely investigation. The Insurance Defendant performed a result-oriented investigation of Plaintiff's claim which

resulted in an unfair, biased, and inequitable evaluation of Plaintiff's loss.  This conduct is a violation of Tex. Ins. Code. ch. 541.

35.     The Insurance Defendant failed to meet its obligations under the Texas Insurance Code regarding timely acknowledgment of  Plaintiff's claim.  This conduct is in violation of Tex. Ins. Code ch. 542.

36.     The Insurance Defendant failed to accept or deny Plaintiff's full and entire claim within the time period mandated by statute.  This conduct is a violation of Tex. Ins. Code ch. 542.

37.     The Insurance Defendant failed to meet its obligations under the Texas Insurance Code regarding prompt payment of the claim without delay.  This conduct is a violation of Tex. Ins. Code. ch. 542.

## V.  CAUSES OF ACTION

38.     **Declaratory Judgment.**     Plaintiff re-alleges the foregoing and following paragraphs.  Pursuant to the Declaratory Judgment Act, Plaintiff is entitled to a declaration that (i) the Policy is enforceable; (ii) the Policy provides Business Income and Extra Expense coverage for the Pharmacy; (iii) the Pharmacy is insured under the Policy and is entitled to damages for Business Income loss and Extra Expense loss caused by the tornado and Defendant's subsequent acts and omissions; (iv) Great Northern is not entitled to receive a substantial windfall and saddle Total Rx with a substantial loss, on the grounds that Total Rx paid two insurance premiums instead of one and because Great Northern refused to resolve Total Rx's Claim on a global basis with Pharmacists Mutual; and (v) Plaintiff is entitled to recover the remaining Policy limits plus other damages.  Alternatively, Plaintiff seeks a declaration that the Policy is ambiguous, and must be interpreted in Plaintiff's favor and in favor of full coverage in

the amount of remaining Policy limits.  Further, Plaintiff requests a declaration that the Insurance Defendant has waived any right, or is estopped, to deny that the Policy provides full coverage for Plaintiff's claim for all Extra Expense and Business Income losses suffered by the Insured up to Policy limits.

39.     **Breach of Contract.**  Plaintiff re-alleges the foregoing and following paragraphs. The acts and omissions of the Insurance Defendant and its agents constitute a breach and/or anticipatory breach of the Insurance Defendant's insurance contract with Plaintiff.  Plaintiff has satisfied all conditions precedent to the fulfillment of its contractual rights, yet the Insurance Defendant has failed to pay the full amount owing under the Policy, including the $905,233 in Extra Expense that Great Northern promised to pay Belfor for those amounts charged by Belfor in excess of $400,000 to restore the Property.  Plaintiff seeks all damages proximately caused by such Policy breaches, including actual damages; consequential damages; reliance damages; special damages; attorneys' fees through trial, appeal, and Supreme Court review; pre- and post-judgment interest; expenses; and costs of Court.

40.     **Violations of the Texas Insurance Code.**  Plaintiff re-alleges the foregoing and following paragraphs.  At all pertinent times, the Insurance Defendant was engaged in the business of insurance as defined by the Texas Insurance Code.  The acts and omissions of the Insurance Defendant and its agents constitute violations of the Texas Insurance Code.  More specifically, the Insurance Defendant has, among other violations, acted unlawfully in violating the following statutory provisions:

**A.     Insurance Code ch. 542, *et seq*., the Prompt Pay Act, by the following, among others:**

41.     The Insurance Defendant failed to acknowledge receipt of the claim or (based on information and belief) make a timely record of the date, manner, and content of the

acknowledgment of Total Rx's claim.  542.055(a)(1), (c).

42.      An insurer must request from the insured all items, statements, and forms that the insurer reasonably believes will be required from the insured to secure final proof of loss. 542.055(a)(3).   Information required by the insurer to secure final proof of loss refers to that information demonstrating that the insured has, in fact, suffered a loss that falls within the coverage terms of the subject insurance policy.   The fact that an insurer requires additional information to determine the extent of the loss has no bearing on whether an insurer has received from the insured all items, statements, and forms that the insurer reasonably believes will be required to secure a final proof of loss.

43.      Once the Insurance Defendant received the information reasonably necessary to secure final proof of loss:

    a.   it had 15 business days to accept or reject Total Rx's claim in writing. 542.056(a).   (The Insurance Defendant could have asked for a 45-day extension, but it does not appear that it did.)   To date, Great Northern has failed to accept or reject Total Rx's claim in writing.   Thus, Great Northern failed to comply with 542.056(a).

    b.   If the Insurance Defendant has rejected the claim in whole or in part, the Insurance Defendant was required to provide Total Rx notice of its denial, and state the reasons for such denial.  542.056(c).  Great Northern failed to comply with this provision.

    c.   Regardless of the fact that the Insurance Defendant failed to formally accept or deny Total Rx's claim in writing within the statutory period, Great Northern was required to pay any covered portions of the claim within 60 days after receiving the items reasonably requested to secure final proof of loss.  542.058(a).  Great Northern failed to comply with this provision.[6]

44.      Total Rx provided to the Insurance Defendant with the information it required to secure a final proof of loss and accept or reject the claim by January 2016 (or alternatively, at the

---

[6] By paying approximately $6,000,000 by April 2016, Great Northern accepted coverage for the Pharmacy's Business Income and property loss.  Nevertheless, this concession alone does not comport with chapter 542.

latest March 2016).  Rather than accept the claim in writing and pay the amounts owed, the Insurance Defendant has strung Total Rx along for approximately 19 months (and continuing), in abject violation of the Prompt Pay Act.

45.    Alternatively, if the Insurance Defendant did not have all items, statements, and forms that it reasonably believed would be required from the insured to secure final proof of loss in January 2016 (or at the latest March 2016), it indisputably did have all such items by August 2016 when it sent a sworn proof of loss to Total Rx to execute.  By letter dated February 11, 2016, Great Northern advised Total Rx that "[u]pon receipt of all information reasonably necessary to secure a final proof of loss, Great Northern will provide you with a proof of loss to be completed by you followed by its position as to the acceptance or rejection of your Claim." By its own admission, the Insurance Defendant had the information it required to secure a final proof of loss as of the time it sent same to Total Rx.  Since August 2016, Great Northern has failed to accept or reject Total Rx's claim in writing in violation of Texas Insurance Code 542.056.

46.    The Insurance Defendant's violations of ch. 542 entitle Total Rx to recover 18% interest per annum on Total Rx's damages, together with reasonable attorney's fees and additional interest under the Finance Code.  *See* 542.060; TEX. FIN. CODE. § 304, *et seq.*

**B.    Insurance Code chapter 541, *et seq.* by the following, among others:**

47.    On March 11, 2016, Great Northern's adjuster, Byron Smith, reported that he was "seek[ing] authority to proceed with paying [Total Rx's] known losses" of $13,175,541.55, which was calculated by deducting $3,625,000 already paid from Great Northern's calculation of Total Rx's gross claim of $16,800,451.55.  Instead of paying this "known loss," Great

Northern—without explanation to Total Rx—paid Total Rx $2,775,125.55, falsely representing that Total Rx's recognized gross claim was only $6,400,125.55.

48.     In truth, by at least March 2016, the Insurance Defendant knew full well that the Pharmacy's Business Income losses would exceed Policy limits by the end of May 2016.  Instead of promptly paying Policy limits, the Insurance Defendant paid only a small fraction of what was owed.  No subsequent amounts have been paid.

49.     Additionally, and in the alternative to its breach of contract claim, Great Northern misrepresented to Total Rx that it would pay all amounts in excess of $400,000 that Belfor charged to repair the Pharmacy.  This misrepresentation violated ch. 541 of the Texas Insurance Code and caused additional harm to Total Rx independent of that incurred as a result of Great Northern's failure to pay Total Rx the benefits to which it is entitled under the Policy.

50.     The Insurance Defendant has engaged in unfair or deceptive acts in the business of insurance by:

a.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability had become reasonably clear.

b.  Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a Policy with respect to which liability had become reasonably clear in order to influence the Insured with respect to another portion of the Policy.

c.  Failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claim.

d.  Refusing to affirm or deny coverage within a reasonable time.

e.  Refusing, failing, or unreasonably delaying a settlement offer under applicable first-party coverage on the basis that other coverage may be available.

f.  Refusing to pay Plaintiff's claims without conducting a reasonable, unbiased, and prompt investigation.

g. Failing to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made.

h. Making, or directly or indirectly causing to be made, a statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance.

51.    Ch. 541 broadly prohibits unfair or deceptive acts and *practices*.[7]  On information and belief, the acts and omissions of the Insurance Defendant committed in this case are not unique to this dispute.  Instead, similar acts and omissions occur with such frequency that they constitute a general business practice of the Chubb Group of Insurance Companies, including Great Northern, with regard to handling these types of claims.  As a member of the Chubb Group of Insurance Companies, the Insurance Defendant's entire process is unfairly designed and executed to reach favorable outcomes for the Insurance Defendant at the expense of its policyholders.

52.    As a result of the foregoing conduct, which was and is the producing cause of injury, loss, and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, reliance damages, special damages, and/or consequential damage, costs, expenses, and reasonable and necessary attorneys' fees through trial, appeal, and Supreme Court review.  Moreover, one or more of the foregoing acts or omissions were "knowingly" made by the Insurance Defendant, entitling Plaintiff to recover treble damages pursuant to the Insurance Code.

53.    **DTPA Violations Under Texas Insurance Code § 541.151.**  Plaintiff re-alleges the foregoing and following paragraphs.  In the alternative, Total Rx Care would show that the

---

[7] *See* TEX. INS. CODE 541.001 ("The purpose of this chapter is to regulate trade *practices* in the business of insurance by: (1) defining … trade *practices* in this state that are unfair methods of competition or unfair or deceptive acts or *practices*; and (2) prohibiting those trade *practices*."); *see also* 541.052, 541.060, and 541.061.

Insurance Defendant committed an unlawful deceptive trade practice under DTPA § 17.46(b)(12), as incorporated by Texas Insurance Code § 541.151, when it convinced Total Rx to permit Belfor to rebuild the Pharmacy by falsely assuring Total Rx that the Insurance Defendant would pay the Belfor invoice beyond the sum of $400,000.  Plaintiff relied on this promise to its detriment.  Specifically, Belfor's invoice exceeded this amount by the sum of $905,233, and the Insurance Defendant has refused to pay for any part of Belfor's invoice, even the sum of $452,617 that Insurance Defendant has admitted it owes.

54.     As a result of the Insurance Defendant's misrepresentation of coverage, which was and is the producing cause of injury and damage to Plaintiff, Plaintiff has suffered actual damages.  Moreover, the Insurance Defendant's misrepresentation of coverage was "knowingly" made, entitling Plaintiff to recover statutory damages at the highest multiple of actual damages permitted under Texas law.

55.     **Bad Faith.**  Plaintiff re-alleges the foregoing and following paragraphs.  The Insurance Defendant has refused to pay or delayed in paying a claim after liability has become reasonably clear.  This constitutes a breach of its common law duty of good faith and fair dealing, *i.e.,* it has acted in "bad faith."

56.     Moreover, the Insurance Defendant has "investigated," "adjusted," and otherwise mishandled Plaintiff's claim in a malicious, intentionally harmful, result-oriented, negligent, and/or grossly negligent fashion.  To wit, the Insurance Defendant has, among other things: (i) failed to cooperate with the Insured; (ii) demanded that Total Rx disclose protected health information and breach confidentiality covenants in Total Rx's business contracts; (iii) made unreasonable requests of the Insured; (iv) falsely represented that Great Northern would  pay any amounts in excess of $400,000 that Belfor charged to repair the Pharmacy, causing Total Rx

injury independent from that caused by Great Northern's breaches of the Policy; (v) intentionally or recklessly exposed Total Rx to liability to Belfor and to Total Rx's landlord; (vi) refused to reach a reasonable global settlement with Pharmacists Mutual and Total Rx so that Great Northern could take advantage of its Insured; (vii) threatened that the Insured breached the Policy by asking Great Northern to update its reservation of rights letter before examining the Insured under oath; (viii) withheld material information or provided misleading information to Total Rx; (ix) refused Total Rx's request to mediate before a neutral third party, thereby forcing Total Rx to file this lawsuit instead; (x) prevented Total Rx from being able to reasonably prepare for the Insurer's Examination Under Oath ("EUO") so Great Northern could ambush the Insured; (xi) made argumentative and false accusations against Total Rx during the EUO; (xii) prohibited Total Rx's counsel from examining the witness during Total Rx's EUO to avoid hearing the truth; (xiii) requested information from Total Rx under false pretenses; (xiv) refused to consider information provided by Total Rx that would reasonably refute Great Northern's superficial conclusions regarding the financial impact of the cancellation of Total Rx's contract with Prime Therapeutics; and (xiv) maliciously interfered with and damaged Total Rx's relationship and reputation with Prime Therapeutics and/or other payors.   Such acts and omissions were done maliciously to delay or avoid paying Total Rx's known losses and/or bully Total Rx into dropping or reducing its claim.  Such misconduct is unlawful, and in breach of the special duties Great Northern owes to Total Rx.

57.   Plaintiff has sustained and continues to sustain serious losses as a result of the Insurance Defendant's refusal to honor the Policy.  The Insurance Defendant is well aware that its actions involve an extreme risk that Plaintiff will suffer financial loss as a result of its refusal to honor its obligations.  Yet Great Northern is consciously indifferent to Total Rx's rights.

Alternatively, the Insurance Defendant's acts and/or omissions have been intended to inflict injury on Total Rx.

58.     Plaintiff is entitled to recover its actual damages, consequential damages, reliance damages, special damages, extra-contractual damages, punitive damages, and pre- and post-judgment interest resulting from, produced by, and/or proximately caused the Insurance Defendant's acts or omissions.

59.     **Fraud.**  Plaintiff re-alleges the foregoing and following paragraphs.  Pleading in the alternative, in January 2016, Total Rx advised Great Northern's adjuster, Byron Smith, that Total Rx's contractor could rebuild the Pharmacy for a price in the neighborhood of $400,000. Mr. Smith, however, urged Total Rx to use Great Northern's choice of contractor instead, at a substantial increase in cost.  To induce Total Rx to agree to use Great Northern's contractor, Great Northern promised to pay the entire difference in price between the $400,000 and the amount ultimately charged by Great Northern's contractor (hereinafter, the "differential").  This extra-contractual representation was expressly made by Mr. Smith to Total Rx's business consultant, Mr. Solomon, during a telephone call between the two.  During this telephone call, Mr. Solomon was in his Dallas office.  Mr. Smith was presumably physically located in his office outside of San Antonio although he did not specify his location (nor was his location pertinent to the misrepresentation).

60.     Great Northern's fraudulent, extra-contractual representation was reaffirmed by Great Northern's actions.  For example, Great Northern's contractor would not perform the work absent Great Northern's approval.  The contractor sent its proposed pricing to Great Northern for approval rather than to Total Rx.  Mr. Smith approved the rates charged by Great Northern's contractor, further leading Total Rx to believe that Great Northern would pay the differential as

promised.  Total Rx would not have entered into a Work Authorization Contract with Belfor (Great Northern's contractor) but for Great Northern's promise to pay the differential.  But as Mr. Smith's own writings attest, Great Northern never intended to pay the differential as it represented to Total Rx it would, and in fact, refused to pay the differential (or any part thereof) after Belfor completed its work.

61.     The Insurance Defendant's adjuster, Byron Smith, made a false representation by telephone, in early January 2016 to Total Rx's business consultant, Steve Solomon (in Dallas), when Mr. Smith expressly promised that Great Northern would pay the differential.  The representation was material and caused Total Rx to justifiably rely on the truth of same.  When Great Northern made such representation, Great Northern knew the representation was false, or made the representation as a positive assertion recklessly without knowledge of its truth.  Great Northern made the representation with the intent that Total Rx act on it to its detriment.  Total Rx relied on the representation.  But for such promise by Mr. Smith, Total Rx would not have authorized Belfor to rebuild the Pharmacy facility.  The representation caused Total Rx injury beyond that suffered as a result of Great Northern's breaches of the Policy.  That is, recovery of the differential by Total Rx is not dependent on the existence of coverage. Great Northern should be held to make good on its extra-contractual promise to pay the full amount of the differential.

62.     Great Northern has refused to pay the differential, or any portion thereof.  Such false and/or reckless statements by Great Northern are the proximate cause of the following damages suffered by Total Rx: out of pocket damages; benefit of the bargain damages; reliance damages; exemplary or punitive damages; Court costs; reasonable attorneys' fees through trial, appeal, and Supreme Court review; and pre-judgment and post-judgment interest.

63. **Promissory Estoppel.** Plaintiff re-alleges the foregoing and following paragraphs. Pleading in the alternative, Great Northern is by its actions and statements estopped to deny responsibility for the differential. Specifically, the Insurance Defendant promised Total Rx that Great Northern would pay the differential if Total Rx permitted the Insurance Defendant's expensive contractor to repair the Pharmacy. This promise was in addition to the promises that underlie the Policy. In making this promise, Great Northern should have reasonably expected that Total Rx would enter into the Work Authorization Contract with Belfor. Total Rx relied on Great Northern's promise to its detriment, and incurred significant costs and interest as a result of its justifiable reliance. Injustice can only be avoided by enforcing Great Northern's promise to pay the differential.

64. **<u>Attorneys' Fees.</u>** Plaintiff re-alleges the foregoing and following paragraphs. Plaintiff has been required to engage the services of the undersigned attorneys and has agreed to pay a reasonable fee for services expended and to be expended in the prosecution of Total Rx's claim against the Insurance Defendant through the Trial Court and all levels of the appellate process, including all appeals and Supreme Court review. Plaintiff seeks the recovery of all of such attorneys' fees, costs, and expenses.

65. **<u>Interest.</u>** With respect to all causes of action asserted herein, Plaintiff seeks the recovery of pre-judgment and post-judgment interest at the highest rates allowable by law.

## VI.   CONDITIONS PRECEDENT

66. All conditions precedent for Plaintiff to recover under the Policy and all causes of action pled herein have been met, or have been waived by the Insurance Defendant.

## VII.   JURY DEMAND

67. Plaintiff requests a trial by jury.

## VIII.   PRAYER

WHEREFORE, Plaintiff seeks and prays for the following relief:

A.     The Court's declaration as requested above.

B.     Damages for Plaintiff for breach of contract, including actual damages, consequential damages, benefit of the bargain damages, out of pocket damages, reliance damages, special damages, Business Income loss, and/or Extra Expense loss proximately caused or produced by Defendant's acts or omissions.

C.     Statutory penalty in the amount of 18% interest per annum for the Insurance Defendant's violations of the Prompt Pay Act.

D.     Damages for violations of Chapter 541 of the Texas Insurance Code, up to treble damages.

E.     Damages for violation of the DTPA, as incorporated by Texas Insurance Code § 541.151, including statutory damages at the highest multiple of actual damages permitted under Texas law.

F.     Damages for breach of the duty of good faith and fair dealing, including but not limited to punitive damages.

G.     Damages for fraud, including but not limited to punitive damages.

H.     Damages for promissory estoppel.

I.     Reasonable and necessary attorneys' fees through the Trial Court, appeal, and Supreme Court review.

J.     Pre- and post-judgment interest, expenses, and costs of Court.

Plaintiff also seeks all other relief and rulings to which it may be legally or equitably entitled.

Respectfully Submitted,

**ANDREWS KURTH KENYON**

*/s/ Robert M. Hoffman*
Robert M. Hoffman
State Bar No. 09788200
RobHoffman@andrewskurth.com
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  (214) 659-4653
Facsimile:   (214) 659-4401

Mary Kaylan Dunn
State Bar No. 24076359
kaylandunn@andrewskurth.com
600 Travis Street, Suite 4200
Houston, Texas  77002
Telephone:  (713) 220-4200
Facsimile:  (713) 220-4285
**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 14, 2017, a true and accurate copy of the foregoing document was filed with the Clerk of Court and copies of the same have been provided by ECF to the following counsel of record:

Robert S. Harrell
robert.harrell@nortonrosefulbright.com
Rafe A. Schaefer
rafe.schaefer@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney St., Suite 5100
Houston, TX  77010-3095

*/s/ Robert M. Hoffman*
Robert M. Hoffman